856 A.2d 806

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Joseph D'AMATO, Appellant.**

Supreme Court of Pennsylvania.

Submitted Aug. 21, 2002.

Decided Sept. 2, 2004.

494

496

Neil E. Jokelson, Philadelphia, for Joseph D'Amato.

Hugh J. Burns, Philadelphia, Amy Zapp, Harrisburg, for Com. of Pa.

Before: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## OPINION

Justice SAYLOR.

This is an appeal from an order of the Court of Common Pleas of Philadelphia County dismissing a capital, post-conviction petition. For the reasons that follow, we affirm in part, and remand for limited further proceedings.

### I. Background

The facts and procedural history underlying the judgment of sentence in this matter are detailed in this Court's disposition on direct appeal. *See Commonwealth v. D'Amato*, 514 Pa. 471, 476–80, 526 A.2d 300, 302–04 (1987). Briefly, on the evening of March 19, 1981, the victim, Anthony Patrone, approached Joseph D'Amato ("Appellant") in a restaurant in Philadelphia, and the two began to discuss a plan to defraud an insurance company by reporting as stolen an automobile belonging to Appellant's girlfriend, Bernadette McFarland.

The scheme involved "cutting up" the car and selling its parts, and also collecting the insurance money. Appellant, Patrone, and Ms. McFarland left the restaurant and drove to a nearby parking lot to discuss the idea further. At some point, however, Appellant became suspicious that Patrone intended to betray Appellant and have him arrested. Thus, Appellant ordered Patrone out of the car, pulled out a gun, and shot him twice at close range in the face and chest, killing him. Witnesses observed a car matching the description of Ms. McFarland's vehicle exit the parking lot and drive away with two individuals inside and its lights off (although it was after 10:00 p.m.). Appellant disposed of the murder weapon by throwing it into a river; it was never found.

After the shooting, Appellant and his girlfriend abandoned the vehicle and fled Philadelphia. Appellant ultimately became a suspect in the Patrone homicide, as well as in the shooting deaths of two other individuals, John Amato and Anthony Bonaventura. Philadelphia police obtained an arrest warrant for Appellant and, later, a federal fugitive flight warrant. Appellant and Ms. McFarland remained at large for approximately nine months. In December of 1981, FBI agents apprehended them near Youngstown, Ohio. Appellant waived extradition and was returned to Philadelphia. After being advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), Appellant agreed to speak with the police without an attorney present, and provided separate written confessions to all three homicides. Appellant subsequently filed pre-trial motions to suppress the confessions, as well as evidence obtained through police searches. All of the statements and evidence from the three matters were consolidated for a suppression hearing. At the conclusion of the hearing, the court denied Appellant's suppression requests.

Appellant was tried separately for the three homicides. He was ultimately found guilty of first-degree murder as to Mr. Amato, and sentenced to life imprisonment. Appellant was thereafter convicted of first-degree murder as to Mr. Patrone, the victim herein. In the penalty phase, the jury found one

aggravating circumstance—that Appellant had been convicted of another offense for which a sentence of life imprisonment was impossible, *see* 42 Pa.C.S. § 9711(d)(10)—and no mitigating circumstances. Accordingly, the jury set the penalty at death. *See* 42 Pa.C.S. § 9711(c)(1)(iv).[1] Appellant retained new counsel to file post-sentence motions. After these were denied, Appellant again hired new counsel to represent him on direct appeal to this Court, which affirmed the judgment of sentence on May 22, 1987. *See D'Amato*, 514 Pa. at 501, 526 A.2d at 315.

In March of 1989, Appellant filed a *pro se* petition for collateral relief under the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541–9546 (the "PCRA"). Counsel was appointed, and a series of amended petitions ensued, culminating in a third amended petition filed in August of 1996, seeking relief as to all three murder convictions,[2] and requesting unspecified discovery materials alleged to be in the possession of the district attorney which would purportedly demonstrate the "motive and opportunity of others to commit the murders." The three cases were consolidated for post-conviction purposes by order of the common pleas court. Thereafter, the Commonwealth provided discovery materials, and, in July of 1998, Appellant filed papers styled as a motion seeking a new trial based upon newly discovered evidence, a petition for habeas corpus relief, and a petition for relief under the PCRA supplemental to the third amended petition. The Commonwealth moved for dismissal of the petition; in response, Appellant submitted twenty exhibits, which included an affidavit of Robert L. Mason, a statement of William Boyle, and an affidavit of trial counsel, Robert Mozenter, Esq. Argument was heard on the motion to dismiss in May of 2000, and the

1. Appellant was also convicted of third-degree murder for the killing of Bonaventura. Appellant's first trial in that matter ended in a mistrial. His conviction at his second trial occurred after the penalty phase of the present case concluded.

2. Although the record is not explicit on this point, it appears that the initial post-conviction petitions relative to the Amato and Bonaventura murders were filed prior to 1988 under the PCRA's predecessor, the Post Conviction Hearing Act ("PCHA").

PCRA court subsequently noted its intent to dismiss the petitions. This notice consisted of a one-page form with a box checked indicating that the issues raised "are not genuine issues concerning any material fact(s), have been previously litigated and/or have been waived." [3] The court thereafter dismissed Appellant's petition by order dated February 14, 2001, without holding an evidentiary hearing. A written opinion in support of dismissal was issued on June 29, 2001. In the opinion, the court found many of the issues waived, and resolved others on the merits. This appeal followed with respect to the capital case. [4]

Appellant presently argues that he has never had the benefit of an evidentiary hearing with respect to any of his post-conviction claims, which include assertions of ineffective assistance of counsel, after-discovered evidence, and deprivation of counsel at a critical stage in the penalty phase of his trial. Relevant to the present case, we note that, to be eligible for relief, Appellant must plead and prove, by a preponderance of the evidence, that the challenged conviction or sentence resulted from: ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place; or the unavailability at the time of trial of exculpatory evidence that has subsequently become available and that would have affected the outcome of the trial if it had been introduced. *See* 42 Pa.C.S. § 9543(a)(2)(ii), (vi). Additionally, Appellant must show that the asserted error has not been previously litigated or waived. *See* 42 Pa.C.S. § 9543(a)(3).

3. The court originally sent its pre-dismissal notice on July 19, 2000, pursuant to then-rule 1507 (now Rule 907). After counsel pointed out that notice pursuant to then-rule 1509 (now Rule 909) is required in capital PCRA cases, the court furnished an amended notice pursuant to that rule on August 14, 2000.

4. The present appeal only involves claims related to Appellant's judgment of sentence for the murder of Anthony Patrone. In disposing of these claims, we do not purport to resolve other claims relative to Appellant's convictions for the killing of John Amato or Anthony Bonaventura.

## II. Allegations of ineffective assistance of trial counsel

Appellant initially advances several allegations of ineffective assistance of counsel relating to events at both the guilt and penalty phases of trial. In framing his argument, Appellant presents lengthy quotations from his various amended PCRA petitions. These quotations include statements of the alleged instances of ineffectiveness, together with a conclusory assertion that post-trial and direct appellate counsel were ineffective for failing to raise them. *See* Brief of Appellant at 17, 21–22.

All of the allegations relating to trial counsel's stewardship are waived, as they were not raised during post-trial or direct appellate proceedings. *See* 42 Pa.C.S. § 9544(b). Although this Court recently held that claims of trial counsel's ineffectiveness raised for the first time on collateral review will, in general, no longer be deemed waived, *see Commonwealth v. Grant*, 572 Pa. 48, 67, 813 A.2d 726, 738 (2002), that holding does not apply here because Appellant's direct appeal was concluded prior to *Grant. See id.* at 68–69, 813 A.2d at 739. Under the pre-*Grant* framework, a post-conviction petitioner cannot invoke substantive merits review of a waived claim of ineffective assistance of trial counsel by simply appending a conclusory assertion that all intervening counsel were ineffective for failing to raise it. *See Commonwealth v. Bond*, 572 Pa. 588, 601, 819 A.2d 33, 40 (2002); *Commonwealth. v. Jones*, 571 Pa. 112, 127, 811 A.2d 994, 1003 (2002). Rather, to succeed on an allegation of appellate counsel's ineffectiveness—the only claim over which the PCRA court retains cognizance, *see Commonwealth v. Rush*, 576 Pa. 3, 11, 838 A.2d 651, 656 (2003)—a post-conviction petitioner must, at a minimum, present argumentation relative to each layer of ineffective assistance, on all three prongs of the ineffectiveness standard as set forth in *Commonwealth v. Pierce*, 567 Pa. 186, 786 A.2d 203 (2001). These elements are: (1) the underlying claim has arguable merit; (2) counsel's act or omission lacked a reasonable basis; and (3) counsel's deficiency caused him

prejudice.[5] *See Commonwealth v. McGill,* 574 Pa. 574, 584–85, 832 A.2d 1014, 1020 (2003) (citing *Pierce,* 567 Pa. at 203, 786 A.2d at 213). Because Appellant has not presented such argumentation, his claims, as stated, are insufficient to trigger merits review.

■ Still, in *McGill,* this Court recognized that it has not been entirely clear in the past as to what is required of a PCRA petitioner seeking to plead and prove a layered claim of ineffectiveness, and, accordingly, indicated a general preference to remand to the PCRA court for further development in circumstances such as are presented here. *See id.* at 590–91, 832 A.2d at 1024. *McGill* also clarified, however, that such a remand is unnecessary where the post-conviction petitioner fails to "thoroughly plead and prove" the underlying allegation that trial counsel was ineffective.[6] The reason is that a necessary condition of success, even on a properly-layered ineffectiveness claim, is the presentation of an underlying issue with arguable merit. Hence, a lack of arguable merit in the underlying issue is fatal to a post-conviction petitioner's ineffectiveness claim regardless of whether his pleadings and proofs conform to the layering requirements expressed in *McGill. See Rush,* 576 Pa. at 14, 838 A.2d at 657–58; *McGill,* 574 Pa. at 591, 832 A.2d at 1024–25.[7] Here, the PCRA court

5. The "prejudice" prong, under the PCRA, is satisfied when the petitioner demonstrates that the alleged ineffectiveness so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place, *see* 42 Pa.C.S. § 9543(a)(ii), in other words, that there is a reasonable probability that, but for counsel's act or omission, the outcome of the proceeding would have been different. *See Commonwealth v. Kimball,* 555 Pa. 299, 312–13, 724 A.2d 326, 333 (1999).

6. The *McGill* holding in this regard occurred in a context where the PCRA court rejected the underlying allegation of trial counsel ineffectiveness on the merits. Logically, the same holding should apply whenever this Court makes an independent determination that the post-conviction petitioner's pleading and presentation to the PCRA court was insufficient to establish the underlying allegation of trial counsel ineffectiveness on the merits, even where the PCRA court dismissed the claim without reaching the merits.

7. In order to determine whether there is, indeed, a lack of arguable merit in the underlying issue so as to eliminate any need for a remand, this Court must, of necessity, review that issue. Thus, it is perhaps

dismissed Appellant's claims without a hearing because it found that all of the underlying allegations of trial counsel ineffectiveness were waived, previously litigated, or meritless. We agree with the PCRA court's determination in this regard, and therefore, find that all ineffectiveness claims presented here fit within the *McGill* exception.

### A. Alleged ineffectiveness at voir dire

First, Appellant charges that trial counsel was ineffective for omitting to life-qualify the jury and for failing to "rehabilitate" jurors who were excused for cause when they expressed moral or philosophical opposition to the death penalty.[8] The PCRA court rejected this issue as having been both waived and previously litigated. Unfortunately, the court applied the previous litigation bar based upon a 1986 Superior Court memorandum opinion affirming Appellant's judgment of sentence for the Amato homicide. Under the applicable version of the PCRA, an issue may only be deemed previously litigated if it was disposed of in the trial court and no appeal was taken; or the highest appellate court in which the post-conviction petitioner could have had review as a matter of right has ruled on its merits; or it was raised and decided in a prior proceeding collaterally attacking the pertinent conviction or sentence. *See* 42 Pa.C.S. § 9544(a) (repealed in part).[9] As none of these conditions apply here, the PCRA court erred in stating that the issue was previously litigated. As discussed, however, the underlying claim of trial counsel ineffectiveness

somewhat ironic that, although merits review of the underlying issue is purportedly unavailable absent a properly layered claim of ineffective assistance of direct appellate counsel, some level of merits review will often be undertaken to determine whether a remand for proper layering is warranted.

8. Life-qualification refers to the process of identifying and excluding prospective jurors who have a fixed opinion that a sentence of death should always be imposed for first-degree murder. *See Commonwealth v. Keaton*, 556 Pa. 442, 467 n. 9, 729 A.2d 529, 542 n. 9 (1999).

9. Because Appellant's initial petition was filed before January 16, 1996 (the effective date of the 1995 amendments to the PCRA), his petition is governed by the previous version of the act. *See Bond*, 572 Pa. at 596, 819 A.2d at 37.

is waived; moreover, we find that it lacks arguable merit, thus eliminating the need for a *McGill* remand.

■ Although a defendant must be permitted, on request, to ask life-qualifying questions during *voir dire, see Morgan v. Illinois,* 504 U.S. 719, 736, 112 S.Ct. 2222, 2233, 119 L.Ed.2d 492 (1992), counsel is not required to do so, *see Bond,* 572 Pa. at 617, 819 A.2d at 50, and any such omission on the part of counsel does not constitute ineffectiveness absent a showing that counsel's overall performance led to the seating of a jury which was not fair and impartial. *See generally Commonwealth v. Morris,* 546 Pa. 296, 308, 684 A.2d 1037, 1043 (1996). Here, Appellant merely advances a contention that trial counsel should have asked life-qualifying questions, but he does not identify any aspect of the *voir dire* proceedings that would suggest that the jury ultimately empaneled was biased in favor of the death penalty. *See Ross v. Oklahoma,* 487 U.S. 81, 86, 108 S.Ct. 2273, 2277, 101 L.Ed.2d 80 (1988) (stating that the appellant carries the burden of showing that his jury was not impartial); *Keaton,* 556 Pa. at 471, 729 A.2d at 545 (denying relief where the appellant did not "contend that any of the jurors who actually decided his fate were not impartial" (citing *Ross,* 487 U.S. at 84, 108 S.Ct. at 2276)). Moreover, this Court has repeatedly rejected claims similar to the one under review. *See, e.g., Commonwealth v. Johnson,* 572 Pa. 283, 305–06, 815 A.2d 563, 575–76 (2002); *Commonwealth v. Peterkin,* 511 Pa. 299, 320, 513 A.2d 373, 383–84 (1986); *Commonwealth v. Szuchon,* 506 Pa. 228, 256–57, 484 A.2d 1365, 1380 (1984). Therefore, this allegation of trial counsel's ineffectiveness is insufficient to prove an entitlement to relief even under appropriate layering.

*B. Alleged ineffectiveness in cross-examining a Commonwealth witness*

■ Next, Appellant asserts that trial counsel was ineffective for failing to object to a Commonwealth witness's testimony that her prior statement to the police was given pursuant to a lie detector test. The witness, Elizabeth Klitsch, was a bartender at the restaurant where Appellant met the victim on

the night of the murder. Her testimony established that she saw the victim at the restaurant that evening, and that he was talking to individuals that she could not identify. She did not state that she had seen either Appellant or his girlfriend at the restaurant. During cross-examination, defense counsel engaged in a line of questioning aimed at impeaching Ms. Klitsch's credibility by referring to discrepancies between her trial testimony and her statement to police. At one point during cross-examination, Ms. Klitsch revealed that her statement to police had been provided pursuant to a polygraph test, in order to explain that some of the answers were required to be either "yes" or "no." *See* N.T. 1/31/83 at 71–72. Counsel did not interpose any objection to this revelation. Appellant suggests that the failure to object to such testimony helped to "bolster" the witness's credibility.

The PCRA court denied relief on this claim, stating that the issue was waived and that it was meritless, as it would have been "preposterous" for counsel to object to his own reliance upon the polygraph results. Presently, Appellant only offers a one-sentence argument that the PCRA court erred, stating that its analysis overlooks that the allegation of ineffectiveness pertains to trial counsel's alleged "bolstering of the credibility of the witness based upon her having been polygraphed." Brief of Appellant at 28–29. This argument is so undeveloped that it is the functional equivalent of no argument at all. Therefore, the issue must be deemed waived in this Court. *See Commonwealth v. Williams*, 557 Pa. 207, 223, 732 A.2d 1167, 1175 (1999) (noting that relief is unavailable based upon undeveloped claims for which insufficient arguments are presented on appeal); *Commonwealth v. La-Cava*, 542 Pa. 160, 176 n. 9, 666 A.2d 221, 228 n. 9 (1995). Moreover, Appellant does not explain how counsel's purported bolstering could have unfairly harmed Appellant, particularly as neither Ms. Klitsch's trial testimony, nor her statement to police, reflected that she had seen Appellant or his girlfriend at the restaurant on the evening in question, but only that she had seen the victim. To the extent Appellant perceives harm from any consistency between Ms. Klitsch's statement and

certain details of his own confession, any such harm is minimal, as another witness also testified to having seen the victim in the same restaurant on the evening in question. *See* N.T. 2/1/83 at 11. Accordingly, as there is no arguable merit to the underlying issue, any claim of appellate counsel's ineffectiveness in this regard would fail, and a remand for proper layering is unnecessary.

### C. Alleged ineffectiveness concerning a remark by Detective Chitwood

■ Appellant next contends that his trial counsel was ineffective in failing to react properly to a comment made by Detective Michael Chitwood during cross-examination. Detective Chitwood was one of the Philadelphia police officers who brought Appellant back to Philadelphia after he was arrested in Ohio. During cross-examination, counsel began discussing the automobile trip from Ohio to Philadelphia in an attempt to show that Appellant suffered coercion. Counsel asked whether, at a certain point during that journey, Appellant was handcuffed. Detective Chitwood responded, "Absolutely; he was a murderer. I mean we had arrested him for murder." The following colloquy ensued:

[Defense Counsel]. He hadn't been found guilty, had he?

[Det. Chitwood]. He had.

[Defense Counsel]. Had this jury found him guilty on this murder?

[Det. Chitwood]. No, he hasn't been found guilty on this murder, but—do you want me to answer your question? You asked me a question, "Was he found guilty?" ...

[District Attorney]: I ask that he be allowed to answer the question that counsel asked him. If the defense attorney is going to go into it, then the witness should be allowed to—

[Defense Counsel]: Objection.

[District Attorney]: The defense asked a question, was he found guilty of murder. I think the witness should be allowed to answer the question.

THE COURT: That is all. You will withdraw the question?

[Defense Counsel]: I withdraw the question.

N.T. 2/3/83 at 100–01.

In his PCRA petition, Appellant stated that counsel was ineffective because he did not object to Detective Chitwood's comments, move for a cautionary instruction, or move for a mistrial. The PCRA court concluded that the issue was waived, and that it was also meritless because the detective's answer was responsive to the question asked. Appellant insists that Detective Chitwood's statement was not responsive, as Appellant had not been convicted of murder at the time he was handcuffed en route to Philadelphia, and that the detective's comments served to inform the jury that Appellant had been convicted of a separate murder. He cites to this Court's decision in *Commonwealth v. Spruill*, 480 Pa. 601, 391 A.2d 1048 (1978), for the position that the introduction of such information is grounds for a new trial.

In *Spruill*, during the direct testimony of a Commonwealth witness, the prosecutor sought to prove that the defendant had instructed the witness to transport and bury the victim's body. The prosecutor asked whether the witness had ever done anything for the defendant, to which the witness responded that he (the witness) had "[b]uried a couple of bodies" for the defendant. Defense counsel moved for a mistrial, which was denied. This Court reversed and remanded for a new trial, observing that the witness's use of the phase, "a couple of bodies," implied that the defendant had committed at least one other homicide besides the one for which he was on trial. In support of its decision to grant a new trial, the *Spruill* court noted that evidence of prior criminal activity is highly prejudicial, and that the introduction of a statement indicating first-hand knowledge of an unrelated homicide may have impermissibly undermined the defendant's presumption of innocence. *See id.* at 606–07, 391 A.2d at 1050–51. Appellant presently indicates that the above-recited colloquy involving Detective Chitwood unfairly prejudiced him in the same manner as in *Spruill*, and that counsel's failure to request remedial measures rendered the verdict unreliable.

Although Appellant's argument based upon *Spruill* is not without foundation, we do not read that decision to dictate here the result that Appellant advocates, namely, that the challenged remarks resulted in the introduction of other-crimes evidence which automatically makes the verdict untrustworthy. Rather, in the present case—as in every collateral challenge that does not involve structural error for which prejudice is presumed—the reviewing court must assess whether the asserted deficiency in counsel's representation so impaired the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. *See* 42 Pa.C.S. § 9543(a)(2)(ii); *see also Commonwealth v. Blystone,* 555 Pa. 565, 580, 725 A.2d 1197, 1204–05 (1999) (explaining that passing references to other criminal activity do not require reversal unless the record indicates that prejudice resulted from the reference). This assessment, moreover, must be made in light of all the relevant circumstances of the case, and it is Appellant's burden to establish that the process was tainted to the requisite degree. *See Commonwealth v. Travaglia,* 541 Pa. 108, 118, 661 A.2d 352, 357 (1995).[10]

In this regard, several differences between *Spruill* and the proceedings now under review warrant discussion. First, the other-crimes evidence in *Spruill* was elicited during direct examination of a Commonwealth witness; whereas, in the present matter, Detective Chitwood was testifying during cross-examination in which defense counsel, attempting to demonstrate that the confession was coerced, inquired at length concerning the physical restraints placed upon Appellant. This line of questioning opened the door for the witness to proffer some explanation as to why use of handcuffs was warranted. Additionally, the challenged testimony in *Spruill* unequivocally reflected first-hand knowledge that the defendant had committed multiple homicides. Here, by contrast, the detective initially stated that "he was a murderer. I mean we had arrested him for murder," thus clarifying that he only

10. This is in contrast to *Spruill,* where the Commonwealth bore the burden of establishing that the trial court's error was harmless beyond a reasonable doubt.

intended to convey that the defendant had been arrested on a homicide charge, a fact of which the jury was already aware. After counsel's follow-up question, the detective seemed confused in that he appeared to state (somewhat implausibly) that Appellant was convicted of murder before he was arrested, and then, on disclaiming that position, asked, "Do you want me to answer the question?"

We find more troubling the district attorney's actions in imploring the judge to allow the witness to state whether Appellant had been convicted of a separate murder. This arguably raised an inference that she expected information favorable to the prosecution to be forthcoming. Still, counsel immediately withdrew the question, and it was never answered. Moreover, in the overall circumstances of this case, this incident does not stand out as being unduly inflammatory. Indeed, on direct appeal this Court rejected several claims of prosecutorial misconduct by making specific reference to the impassioned advocacy involved at trial, in which both sides "occasionally exceeded the boundaries of overzealousness." The Court observed that the trial judge repeatedly warned the jurors that such "heat-of-battle" remarks should not influence their deliberations. *See D'Amato*, 514 Pa. at 491, 526 A.2d at 310. The judge also cautioned the jury that the comments of counsel do not constitute evidence available for consideration in reaching a verdict. *See, e.g.*, N.T. 2/3/83 at 119, 121; N.T. 2/7/83 at 97–98, 138–39. In light of these factors, we cannot conclude that Appellant has carried his burden of demonstrating that he would have been entitled to a mistrial based upon the challenged remarks, or that the lack of a curative instruction at that point in the proceedings resulted in a process in which no reliable adjudication of guilt or innocence could have taken place.

The conclusion that the verdict was not undermined is supported by noting that the independent evidence of Appellant's guilt was abundant. Of particular importance is Appellant's detailed confession which was read to the jury. This Court recognized on direct appeal that the confession was the "critical and most damaging evidence introduced at trial." *See*

*D'Amato,* 514 Pa. at 479, 526 A.2d at 304. It was corroborated, moreover, by eyewitnesses who observed a vehicle matching the description of Ms. McFarland's car leaving the parking lot with its headlights off and two individuals inside, and by at least one eyewitness who saw Appellant and the victim together at the same restaurant where Appellant claimed to have met the victim on the evening of the murder. *See id.* The jury was also aware that Appellant and Ms. McFarland fled and concealed themselves from police by moving to a geographically remote location and living under assumed names, after having abandoned Ms. McFarland's registered car in Philadelphia—all evidencing a consciousness of guilt. *See* N.T. 2/2/83 at 101–37, 2/4/83 at 79, 85; *Commonwealth v. Harvey,* 514 Pa. 531, 538–39, 526 A.2d 330, 334 (1987) (noting that flight and concealment constitute evidence of consciousness of guilt); *Commonwealth v. Tinsley,* 465 Pa. 329, 333, 350 A.2d 791, 792 (1976) (same). Thus, given all of the other evidence of guilt, Appellant cannot demonstrate that there is a reasonable probability that a curative instruction regarding the challenged remarks would have altered the outcome. *See Blystone,* 555 Pa. at 580, 725 A.2d at 1205 (finding that counsel's failure to seek remedial measures relative to other-crimes evidence was not prejudicial in light of the brief nature of the references and the overwhelming trial evidence of guilt). Consequently, the underlying ineffectiveness claim lacks arguable merit, and there is no need for a remand for appropriate layering.

### D. Penalty-phase jury instruction on preponderance

Appellant next alleges that the trial court rendered an erroneous penalty-phase instruction regarding the proof necessary to establish mitigating circumstances, and that counsel was ineffective for not objecting to it. In the relevant portion of the jury charge, the judge stated:

[T]he Commonwealth has the burden of proving aggravating circumstances beyond a reasonable doubt. The defendant has the burden of proving mitigating circumstances but only

by a preponderance of the evidence. This is a lesser burden of proof than beyond a reasonable doubt.

A preponderance of the evidence exists when one side is more believable than the other side. All the evidence from both sides, including the evidence you heard earlier during the trial in chief, as to aggravating or mitigating circumstances is important and proper for you to consider.

N.T. 2/9/83 at 41.

Appellant contends that the trial court's formulation pertaining to one side being "more believable" than the other was error. Citing to *Commonwealth v. Billa*, 521 Pa. 168, 555 A.2d 835 (1989), he argues that, as a general matter, trial courts may not deviate from the language of the sentencing statute, 42 Pa.C.S. § 9711. He indicates, as well, that the charge failed to align with the standard civil jury instruction on the preponderance of the evidence. That instruction analogizes to a balance, with the evidence favorable to the plaintiff on one side, the evidence favorable to the defendant on the other, and the jury's obligation to determine whether the scales tip in one direction or the other. The PCRA court rejected Appellant's argument, observing that the standard instruction for civil cases was inapplicable, and noting that the standard death penalty instruction defines preponderance simply as the "greater weight of the evidence." The court stated (without explanation) that the trial court's charge was "even more favorable" to Appellant, and hence, prior counsel could not have been ineffective for failing to challenge it. *See* PCRA Court op. at 19–20 (citing Pennsylvania Standard Jury Instruction 15.2502E (Crim)).

The standard instruction cited by the PCRA court, namely, Pennsylvania Instruction 15.2502E (Crim), is intended for use at the beginning of the sentencing hearing and contains only a brief definition of preponderance, namely, "by the greater weight of the evidence." The charge designed for use before the jury retires to deliberate adds context and clarifying language to the definition:

The Commonwealth must prove any aggravating circumstance beyond a reasonable doubt.... By contrast, the defendant must prove any mitigating circumstance. However, the defendant only has to prove it by a preponderance of the evidence, that is, by the greater weight of the evidence. This is a less demanding standard than proof beyond a reasonable doubt. Facts are proven by a preponderance when the evidence shows that it is more likely than not that the facts are true.

Pennsylvania Standard Jury Instruction 15.2502F (Crim).

The instruction provided by the trial judge in this case mirrored the standard instruction in that it placed the preponderance standard in context by noting that it is a lesser burden than that carried by the Commonwealth. Thus, the gravamen of Appellant's complaint is that the judge erred by not utilizing the tipping-of-the-balance metaphor, and by inserting the phrase "more believable" in place of "greater weight" or "more likely than not."

We do not believe that the challenged instruction misinformed or confused the jury as to the meaning of the preponderance-of-the-evidence standard. This Court has held that trial courts need not specifically refer to the tipping of a balance when describing the burden of proof applicable to mitigating factors, *see Commonwealth v. Williams*, 532 Pa. 265, 285, 615 A.2d 716, 726 (1992), and has on multiple occasions deemed the "more believable" phraseology to be acceptable. *See Commonwealth v. Wilson*, 538 Pa. 485, 518, 649 A.2d 435, 451–52 (1994); *Commonwealth v. Baker*, 531 Pa. 541, 569, 614 A.2d 663, 667 (1992); *Commonwealth v. Tilley*, 528 Pa. 125, 146, 595 A.2d 575, 585 (1991). Indeed, from a lay person's perspective, the "more believable" and "more likely than not" formulations would appear roughly equivalent, and courts in other jurisdictions have used some variation of the phrases "more credible" or "more convincing" in describing the meaning of preponderance. *See, e.g., Calcote v. Texas Educ. Found., Inc.*, 458 F.Supp. 231, 237 (W.D.Tex.1976) (resolving the preponderance of the evidence by determining which side's witnesses were "more credible and convincing");

*In re Express One Int'l, Inc.,* 243 B.R. 290, 293 (Bankr. E.D.Tex.1999) (defining preponderance of the evidence as "evidence which is more credible and convincing than the other evidence brought"); *Braud v. Kinchen,* 310 So.2d 657, 659 (La.Ct.App.1975) (defining preponderance of the evidence as "evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it"); *see also* BLACK'S LAW DICTIONARY 1182 (6th ed.1990) (same).

Appellant's reliance on *Billa* is misplaced. In that case, the jury was instructed to "add up" the number of aggravating and mitigating circumstances, and impose the death penalty if and only if it found more of the former than the latter. This Court noted that such a charge disregarded the language of the sentencing statute, under which the jury is directed to perform a weighing process rather than a simple counting process. While forbidding trial courts to deviate from this statutory prescription, the *Billa* decision specifically recognized the need for trial courts to define the significant terms contained in Section 9711, *see Billa,* 521 Pa. at 188, 555 A.2d at 845, one of which is the phrase, "preponderance of the evidence." *See* 42 Pa.C.S. § 9711(c)(1)(iii). Thus, contrary to Appellant's contention, *Billa* does not stand for the position that trial courts have no leeway in describing the meaning of such terms, or that they must follow the standard jury instructions to the letter. Accordingly, the underlying issue lacks arguable merit, and a remand for proper layering is unnecessary.[11]

## E. Other instances of alleged ineffectiveness

Appellant also states that trial counsel was ineffective for: allegedly preventing Appellant from testifying during the suppression hearing and at trial; failing to move for a mistrial in response to certain remarks made by the district attorney during her closing argument in the guilt phase; and failing to

11. Appellant also appears to challenge the manner in which the trial court instructed the jury on how to weigh mitigating factors against aggravating factors if it should find at least one of each. *See* Brief of Appellant at 40. We need not review this issue, however, as the jury did not find any mitigating circumstances.

object to various comments made by the district attorney during the penalty phase. *See* Brief of Appellant at 33–36. Appellant avers that the PCRA court denied relief on all of these claims after deeming them waived. However, he does not provide any argument as to the merits of these claims as such. Therefore, they are undeveloped for purposes of appellate review and must, accordingly, be deemed waived. *See Commonwealth v. Wharton*, 571 Pa. 85, 99, 811 A.2d 978, 986 (2002); *Williams*, 557 Pa. at 223, 732 A.2d at 1175; *LaCava*, 542 Pa. at 176 n. 9, 666 A.2d at 228 n. 9 (1995); *cf.* Pa.R.A.P. 2119(a) (requiring that the argument section of an appellate brief contain "such discussion and citation of authorities as are deemed pertinent").

■■■ Appellant also separately suggests that the matter be remanded to the PCRA court for an evidentiary hearing on all of his allegations of ineffective assistance. *See* Brief of Appellant at 37. Rule 909 (formerly Rule 1509) of the Pennsylvania Rules of Criminal Procedure establishes that a petition for post-conviction relief in a capital case may be dismissed without an evidentiary hearing if there are no genuine issues of material fact and the petitioner is not entitled to relief. *See* Pa.R.Crim.P. 909(B)(2); *Commonwealth v. Bracey*, 568 Pa. 264, 281, 795 A.2d 935, 944 (2001); *Commonwealth v. Hardcastle*, 549 Pa. 450, 454, 701 A.2d 541, 542 (1997). Thus, to obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing. *See generally Commonwealth v. Weddington*, 514 Pa. 46, 50, 522 A.2d 1050, 1052 (1987) ("The controlling factor in determining whether a petition may be dismissed without a hearing is the status of the substantive assertions in the petition."); *Commonwealth v. Pirela*, 556 Pa. 32, 54, 726 A.2d 1026, 1037 (1999). Appellant makes no such showing here, and hence, has not established an entitlement to a remand for a hearing on any of the above allegations of ineffective assistance.

*F. Statutorily excused waiver*

Under the pre–1996 PCRA, which is applicable here, *see supra* note 9, waiver is excused if the petitioner demonstrates either that the alleged underlying error resulted in the conviction or affirmance of sentence of an innocent individual, or that the waiver did not constitute a state procedural default barring federal habeas corpus relief. *See* 42 Pa.C.S. § 9543(a)(3)(ii), (iii) (repealed); *Commonwealth v. Carpenter*, 555 Pa. 434, 446, 725 A.2d 154, 160 (1999); *Commonwealth v. Morales*, 549 Pa. 400, 409, 701 A.2d 516, 520 (1997). Here, however, although Appellant asserted his innocence in his PCRA petition, we have already found all of the underlying ineffectiveness claims to be meritless. Therefore, Appellant cannot demonstrate that counsel's asserted deficiencies resulted in the conviction or affirmance of sentence of an innocent individual. Additionally, Appellant does not dispute that the waiver of these issues resulted in a state procedural default barring federal habeas corpus relief. *See* 42 Pa.C.S. § 9543(a)(3)(iii) (repealed). *See generally Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986) (indicating that appellate counsel's waiver of an issue constitutes a state procedural default, and that overcoming the resulting bar to federal habeas relief requires a showing that counsel's efforts were impeded by some objective factor external to the defense, such as that the factual or legal basis for the issue was unavailable to counsel, or that governmental officials interfered with counsel's ability to raise the issue); *Engle v. Isaac*, 456 U.S. 107, 135, 102 S.Ct. 1558, 1576, 71 L.Ed.2d 783 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 2507, 53 L.Ed.2d 594 (1977). Accordingly, the statutory excuses to waiver contained in the pre–1996 version of the PCRA do not save any of Appellant's challenges to trial counsel's stewardship.

**III. Alleged deprivation of counsel at a critical stage**

Appellant next argues that the PCRA court erred in denying relief on his claim that he was deprived of counsel at a critical stage in the proceedings. Near the conclusion of jury

deliberations in the penalty phase, Appellant's trial counsel, Robert Mozenter, was unable to appear in court with Appellant for reasons that do not appear of record.[12] Therefore, he sent his associate, Michael Durst, Esq., to appear in his place. Shortly thereafter, the jury returned to the courtroom and announced that it had finished deliberating and set the penalty at death. At Mr. Durst's request, the jury was polled to ensure unanimity. See N.T. 2/9/83 at 42–43. After the jury was dismissed, the trial judge addressed Appellant as follows:

> THE COURT: Sir, I am now going to give you your appellate rights so that you will understand them. Your counsel for this moment [Mr. Durst] is standing right next to you. He is a very learned associate of Mr. Mozenter and I believe you know him. Whatever I say, if you wish to, you may ask him what I am talking about. I may direct you to do so if there is any question. Does that cause you any problem?
>
> THE DEFENDANT: No, sir.

N.T. 2/9/83 at 51–52. The court then described Appellant's appellate rights and directed Appellant to consult with "your attorney" (Mr. Durst) to explain any aspect of those rights that remained unclear. After Appellant conferred with Mr. Durst, both affirmed that Appellant understood his rights. See id. at 52–54.

In his PCRA petition, Appellant alleged that the trial court erred and deprived him of his right to counsel when it allowed Mr. Durst to represent him for the portion of the proceedings in which the jury returned the death penalty, and that post-trial and appellate counsel were ineffective in failing to raise this issue.[13] The PCRA court rejected this assertion, concluding that the reading of the verdict was not a critical stage of the proceedings, inasmuch as "nothing counsel could have

---

12. In an affidavit attached to one of Appellant's post-conviction pleadings, Mozenter states that he does not recall why he could not appear in court that day.

13. Unlike the above issues, this claim is not premised upon an allegation that trial counsel provided ineffective assistance, as it rests instead upon an assertion that Appellant lacked trial counsel during the relevant time.

done at that point would have made a difference." PCRA Court op. at 12–13. The court also noted that Appellant had, in any event, agreed to allow Mr. Durst to represent him, as evidenced by the above colloquy. Appellant vigorously disputes these determinations, arguing that the right to counsel attaches during imposition of a sentence, and that his lawyer's sending his associate was insufficient to satisfy that requirement. In this latter regard, Appellant argues specifically that the manner in which Mr. Durst was substituted for Mr. Mozenter did not comport with the Pennsylvania Rules of Criminal Procedure governing the withdrawal and entry of appearance of counsel, and that, accordingly, Appellant was in effect forced to proceed without any representation at all.

Pursuant to the Sixth Amendment, a criminal defendant has a right to be represented by an attorney at all critical stages of a criminal proceeding, that is, stages at which substantive rights may be preserved or lost.[14] *See Commonwealth v. Holzer,* 480 Pa. 93, 104, 389 A.2d 101, 107 (1978); *see, e.g., White v. Maryland,* 373 U.S. 59, 60, 83 S.Ct. 1050, 1051, 10 L.Ed.2d 193 (1963) *(per curiam )* (entry of guilty plea); *Commonwealth v. Johnson,* 574 Pa. 5, 14, 828 A.2d 1009, 1014–15 (2003) (instruction of the jury); *Commonwealth v. Shirey,* 333 Pa.Super. 85, 105–06, 481 A.2d 1314, 1325 (1984) *(voir dire );* *Holzer,* 480 Pa. at 105, 389 A.2d at 107 (suppression hearing); *Commonwealth v. Hughes,* 477 Pa. 180, 185, 383 A.2d 882, 885 (1978) (post-complaint, post-arrest interrogation); *Commonwealth ex rel. Cunningham v. Maroney,* 421 Pa. 157, 159, 218 A.2d 811, 812 (1966) (first appeal as of right). *See generally* 21A AM.JUR.2D *Criminal Law* §§ 1205–1222 (listing stages at which the right to counsel does, or does not, attach). Proceedings relating to the imposition of a criminal sentence constitute a critical stage, at least to the extent that

---

14. The Sixth Amendment right to counsel has been incorporated to the states through the Fourteenth Amendment. *See Gideon v. Wainwright,* 372 U.S. 335, 342, 83 S.Ct. 792, 795, 9 L.Ed.2d 799 (1963). The corresponding right under Article I, Section 9 of the Pennsylvania Constitution is coterminous with the Sixth Amendment guarantee for purposes of determining when the right attaches. *See Commonwealth v. Arroyo,* 555 Pa. 125, 141, 723 A.2d 162, 170 (1999).

the events occurring during those proceedings may affect the sentence imposed or the legal rights of the defendant, including the right to appeal. *See Mempa v. Rhay,* 389 U.S. 128, 135, 88 S.Ct. 254, 257, 19 L.Ed.2d 336 (1967).

 Relevant to the present case, courts in other jurisdictions have concluded that jury deliberations and the return of the verdict are critical stages for Sixth Amendment purposes. *See, e.g., Siverson v. O'Leary,* 764 F.2d 1208, 1214 (7th Cir. 1985); *United States v. Smith,* 411 F.2d 733, 736 (6th Cir. 1969); *Spencer v. State,* 85 Wis.2d 565, 271 N.W.2d 25, 28 (1978). Moreover, a capital sentencing proceeding is sufficiently like a trial to implicate counsel's role in assuring that the adversarial testing process produces a just result. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). A logical corollary is that a critical stage occurs when the jury returns a penalty of death. As demonstrated by the case *sub judice,* this is the point in the proceedings at which the judge informs the defendant of his appellate rights, and the defendant has an opportunity, in consultation with his attorney, to ensure that those rights are understood and preserved. Additionally, the important right of polling the jury to ensure that the death sentence was reached unanimously is either exercised or forever lost at this juncture. *See generally Rush,* 576 Pa. at 18, 838 A.2d at 660 (observing that a defendant has an absolute right to poll the jury after it reaches a verdict of death); *Smith,* 411 F.2d at 736; *Thomas v. Hunter,* 153 F.2d 834, 839 (10th Cir.1946) (explaining the significance and importance of the ability to poll the jury); *State v. Behnke,* 155 Wis.2d 796, 456 N.W.2d 610, 612 (1990).

 This does not mean, however, that Appellant was deprived of his Sixth Amendment right to counsel: even if Mr. Durst's substitution for Mr. Mozenter failed to conform to the criminal procedural rules, it does not follow that a deprivation of counsel occurred, as Appellant was in fact represented by Mr. Durst when the jury returned to the courtroom and announced its verdict. Appellant does not allege that Mr.

Durst was not a member in good standing of the Pennsylvania Bar, that a conflict of interest or some other defect prevented Mr. Durst from representing him, *see Holloway v. Arkansas,* 435 U.S. 475, 484, 98 S.Ct. 1173, 1178–79, 55 L.Ed.2d 426 (1978) (holding that the defendant was deprived of his Sixth Amendment right to counsel where appointed counsel's representation presented a conflict of interest), or that Mr. Durst was otherwise hindered from acting as Appellant's attorney. To the contrary, the record reveals that Mr. Durst was an associate of Robert Mozenter, and that he received the jury's verdict of death, asked that the jury be polled, and consulted with Appellant to explain his post-verdict and appellate rights.

By the time Mr. Durst's representation of Appellant began, moreover, the jury's decision as to both guilt and sentence had already been reached, and Appellant's presentation does not suggest a reasonable probability that Mr. Durst did not do everything on Appellant's behalf in reaction to these events that Mr. Mozenter could have done. Under these circumstances, it is difficult for Appellant to argue that he lacked counsel at this stage of the proceedings. *Cf. United States v. Osterbrock,* 891 F.2d 1216, 1218 (6th Cir.1989) (concluding that, where the verdict was returned and the jury was polled in the presence of the defendant, any prejudice resulting from counsel's absence was merely speculative). *But cf. Behnke,* 456 N.W.2d at 612 (finding denial of counsel prejudicial where the jury was not polled). While we do not approve of an attorney sending stand-in counsel, whose appearance has not been entered, to represent his or her client during criminal proceedings, nevertheless, our disapproval of this practice does not alter the conclusion that Mr. Durst acted as Appellant's counsel during the relevant interval. *But cf. Wilson v. State,* 764 So.2d 813, 816 (Fla.Dist.Ct.App.2000) (holding that, where a stand-in attorney was unfamiliar with the case, denied that the defendant was his client, and did nothing on the defendant's behalf, he did not function as counsel). Consequently, there is no need for a *McGill* remand to develop further the allegation that post-trial and appellate counsel

were ineffective for failing to raise this issue.[15]

Finally, as we have determined that no underlying error occurred, Appellant cannot prove that Mr. Durst's appearance as his counsel constituted an error resulting in the conviction or affirmance of sentence of an innocent individual. *See* 42 Pa.C.S. § 9543(a)(3)(ii) (repealed). Therefore, the statutory excuse for waiver under the prior version of the PCRA cannot save this claim.

## IV. Alleged after-discovered evidence

Appellant finally contends that the PCRA court erred in not holding an evidentiary hearing to explore his claim that he is entitled to a new trial based upon after-discovered evidence. *See* 42 Pa.C.S. § 9543(a)(2)(vi). The evidence at issue consists of: an April 7, 1981 statement that Robert Mason ("Mason") provided to the police; Mason's affidavit, obtained by present counsel in 1997; and a 1997 statement of William Boyle ("Boyle"), Mason's brother-in-law, in which Boyle recants his trial testimony. All these documents were attached to a pleading Appellant filed on September 5, 1997, entitled, "Amended Response to Commonwealth's Motion to Dismiss" (the "Amended Response"). To obtain relief based upon newly-discovered evidence under the PCRA, a petitioner must establish that: (1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict. *See Commonwealth v. Abu–Jamal*, 553 Pa. 485, 517, 720 A.2d 79, 94 (1998); *Williams*, 557 Pa. at 231, 732 A.2d at 1180. Appellant's

---

**15.** In the hypothetical scenario discussed in *McGill*, the "underlying claim" consisted of an allegation that trial counsel rendered ineffective assistance. The present underlying claim, however, is that the trial court erred in approving substitute counsel during the return of the sentence. Nevertheless, under the *McGill* framework, the underlying claim of trial error must be meritorious for relief to obtain, whether or not it is premised upon an assertion of ineffective assistance of trial counsel. Additionally, the present claim is layered because post-trial and appellate counsel were distinct, thus necessitating the development of all three prongs of the test for ineffective assistance as to each. Therefore, the *McGill* layering framework applies to this claim.

argument, which lacks substantial clarity, appears to contain three distinct newly-discovered evidence claims.

Initially, Appellant avers that Mason's April 7, 1981 statement to police constitutes after-discovered evidence entitling him to a new trial. Mason witnessed certain events connected with the killing of Bonaventura and disposal of his body. He gave police a detailed statement concerning his knowledge of that matter on April 1, 1981, in which he implicated Appellant in that offense. On April 7, 1981, Mason gave the police another statement, clarifying several minor aspects of his April 1 statement. Appellant argues that the Commonwealth concealed Mason's April 7 statement in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), a charge the Commonwealth denies.

Regardless of whether the Commonwealth concealed evidence, this claim is meritless, as Appellant cannot demonstrate that Mason's April 7 statement could have altered the outcome of the proceedings. *See* 42 Pa.C.S. § 9543(a)(2)(vi). Mason did not testify at Appellant's trial for the killing of Patrone or at any other trial which resulted in Appellant's conviction.[16] Additionally, the events recounted in both of Mason's statements pertain only to the death of Bonaventura, and there is no apparent relationship between these events and the killing of Patrone, nor does Appellant suggest that any such nexus exists. Accordingly, Mason's statement of April 7, 1981 cannot form the basis of a meritorious newly discovered evidence claim with regard to Appellant's conviction for the murder of Patrone.[17]

In Appellant's second claim, he contends that Mason's 1997 affidavit constitutes after-discovered evidence entitling him to relief. In this affidavit, Mason affirms that: he gave state-

16. Mason testified at Appellant's first trial for the Bonaventura killing, which ended in a mistrial, but not at the second one.

17. The standard for relief under *Brady* is whether there is a reasonable likelihood that, had the suppressed evidence been disclosed to the defense, the result of the proceedings would have been different. *See Strickler v. Greene*, 527 U.S. 263, 280, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999). Because Mason's April 7, 1981 statement is immaterial to the Patrone proceedings, it does not meet this test.

ments to police on April 1, 1981 and April 7, 1981, in relation to the death of Anthony Bonaventura; prior to Appellant's first trial for the Bonaventura homicide, he (Mason) and the prosecutor had a disagreement concerning the content of the testimony Mason would provide at that trial; and this disagreement centered on who owned and/or possessed "the gun"—an apparent reference to the weapon used to kill Bonaventura. The only basis on which Appellant argues that this affidavit is material to the Patrone matter consists of a quotation from Mozenter's affidavit in which Mozenter indicates that he "now understand[s]" that portions of Mason's April 1, 1981, statement are "not true as per [Mason's] affidavit." Brief of Appellant at 65. Mozenter continues that, had he previously been aware of these alleged untruths, he would have been able more effectively to impeach the credibility of Commonwealth witness William Boyle.

This claim, too, is meritless. First, Mason's 1997 affidavit contains no representations to the effect that his April 1 and 7, 1981 statements to the police contained falsehoods. Additionally, there is no apparent nexus between the conduct described in those statements (which, as noted, pertains to the death of Bonaventura) and the events recounted by Boyle at Appellant's trial for the murder of Patrone. Indeed, the events described in Boyle's testimony are not even discussed in Mason's April 1 and April 7 statements, and hence, any alleged falsehoods contained in them would be immaterial to the Patrone murder. Consequently, Appellant has failed to demonstrate how any information contained in Mason's 1997 affidavit could have been helpful in impeaching Boyle's credibility at the trial in the Patrone matter.

In his third and final claim, Appellant argues that Boyle's 1997 statement constitutes after-discovered evidence entitling him to relief, as Boyle, in effect, recants his trial testimony from fourteen years earlier. By way of background, Boyle testified at trial that, between 11:00 a.m. and 2:00 p.m. on the day that Patrone was murdered, Appellant came to his (Boyle's) home and met with himself, Mason, and one other individual. During this meeting, Appellant asked to borrow

Boyle's .38–caliber two-barrel derringer handgun and indicated that he would return it that night. Complying with Appellant's request, Boyle lent him the gun, and then falsely reported it stolen to the police. Boyle never saw the weapon again. *See* N.T. 2/1/83 at 138–53. In his 1997 statement, Boyle indicates that, in fact, no meeting occurred at his house on the day of the Patrone homicide, and he did not lend Appellant his gun that day.

In its opinion dismissing Appellant's petition, the PCRA court made no specific mention of Boyle's recantation.[18] Rather, the court stated that all of the after-discovered evidence claims were either baseless or duplicative. The court then proceeded to address the merits of the claim relating to Mason's April 7, 1981 statement to the police (discussed above), and, thereafter, indicated that all other issues raised in the Amended Response had already been discussed earlier in the opinion. This assertion is mistaken; the Boyle recantation is not discussed or mentioned anywhere in the opinion, and hence, it appears that the PCRA court may have overlooked it.[19]

We acknowledge that, as a general matter, recantation evidence "is notoriously unreliable, particularly where the witness claims to have committed perjury." *Commonwealth v. Dennis*, 552 Pa. 331, 356, 715 A.2d 404, 416 (1998); *accord Commonwealth v. McCracken*, 540 Pa. 541, 548, 659 A.2d 541, 545 (1995); *Commonwealth v. Mosteller*, 446 Pa. 83,

18. Boyle does not explicitly recant his trial testimony; rather, he claims not to remember what he said at trial. However, as his statement contradicts essential portions of his testimony, it is the equivalent of a recantation.

19. The PCRA court did note that all of the purported after discovered evidence was "improperly presented in the form of a Response, rather than an amendment." PCRA Court op. at 20. However, this technical defect cannot be controlling here because the pre-dismissal notice did not identify it as a basis for the denial of relief, and hence, Appellant was not afforded an opportunity to cure it. *See Commonwealth v. Williams*, 566 Pa. 553, 568, 782 A.2d 517, 526 (2001); *cf. Rush*, 576 Pa. at 16 n. 10, 838 A.2d at 659 n. 10 (no need for remand due to inadequate pre-dismissal notice relative to an issue of law which can be resolved on the existing record).

89, 284 A.2d 786, 788 (1971). This Court has also emphasized, however, that, even as to recantations that might otherwise appear dubious, the PCRA court must, in the first instance, assess the credibility and significance of the recantation in light of the evidence as a whole. The *Williams* decision, in particular, criticized the PCRA court for failing to make any independent determination as to the subject recantation's believability, opting instead to adopt the Commonwealth's arguments on the matter wholesale. This Court explained that

> the incorporated segment of the Commonwealth's brief ... did not contain any particularized finding as to the actual credibility of Ms. Boone's prospective testimony as reflected in her declaration. Nor is there anything in the Common- wealth's brief which would demonstrate that the PCRA court actually considered Ms. Boone's recantation in light of the trial record of her testimony and her post-trial declaration. The PCRA court's decision, therefore, is tantamount to the *per se* preclusion of post-conviction relief based upon recantation evidence. Since this would be inconsistent with our precedent, we find that the PCRA court abused its discretion not only in failing to make an independent credibility determination, but also in adopting reasons in support of its decision that were insufficient on their face.

*Williams*, 557 Pa. at 232–33, 732 A.2d at 1180–81. The *Williams* court remanded for a proper disposition, noting that "the PCRA court as factfinder is in a superior position to make the initial assessment of the importance of Ms. Boone's testimony to the outcome of the case...." *Id.* at 233, 732 A.2d at 1181.

The same principles apply here. Although the PCRA court did not adopt the Commonwealth's argument, by failing to address Boyle's recantation it equally defaulted in its duty to assess the credibility of that statement and its significance in light of the trial record. Therefore, we will remand the matter for the limited purpose of making such a determination.

## V. Conclusion

After reviewing each of Appellant's claims, we affirm the decision of the PCRA court in all respects except as indicated in the body of this Opinion. We remand the matter for further proceedings in accordance with *Williams*, 557 Pa. at 232–33, 732 A.2d at 1180–81, limited to the single issue raised by Appellant pertaining to Boyle's 1997 recantation. To aid its resolution of this issue, the PCRA court is directed to conduct a hearing at which Mr. Boyle may be heard. The PCRA court is further directed to complete the proceedings within 90 days, and Appellant may file supplemental briefing in this Court within 20 days after the entry of a supplemental opinion by the PCRA court, with the Commonwealth being afforded 20 days to respond. This Court retains jurisdiction over this matter. *See Rush*, 576 Pa. at 21, 838 A.2d at 662.

Justice EAKIN files a concurring opinion.

Justice CASTILLE files a concurring and dissenting opinion.

### *CONCURRING OPINION*

Justice EAKIN.

I join the majority opinion with respect to the resolution of all issues. Recognizing the precedent of employing the after-discovered evidence test to analyze recantation testimony, I write separately only to suggest that test is not really designed to assess post-verdict recantation, and ought to be reconsidered. Recantation at this stage may "fall under the heading" of after-discovered evidence, but this is only because it is "discovered after" trial. True "after-discovered evidence" is evidence that was existent but undiscovered at the time of trial as opposed to recantation evidence which did not exist at trial.

Analysis under the after-discovered evidence exception requires examination of whether a petitioner has shown the evidence:

1) has been discovered after the trial and could not have been obtained at or prior to the conclusion of the trial by the exercise of reasonable diligence;

2) is not merely corroborative or cumulative;

3) will not be used solely to impeach the credibility of a witness; and

4) is of such nature and character that a different verdict will likely result if a new trial is granted.

*Commonwealth v. McCracken*, 540 Pa. 541, 659 A.2d 541, 545 (1995) (citation omitted).

As the test clearly assumes, after-discovered evidence existed at the time of trial, it was just not discovered until later. Recantation is new evidence, withdrawing, or repudiating that which went before; by definition, this "new" evidence was nonexistent at the time of trial. Thus, as applied to recantation, the first prong is never determinative; it is definitionally redundant and meaningless.

Likewise, the value (or lack thereof) of recantation evidence is not measured by the second prong, which considers whether it is merely corroborative or cumulative. It is inherently non-corroborative and non-cumulative of the testimony recanted; while the substance of it may, in the end, corroborate or be cumulative of *other* evidence, this has little to do with whether it should be the basis of relief. The very act of recanting gives the resultant version a different reputation and pedigree than other consistent-from-the-first testimony. When can recanted trial testimony be termed "merely cumulative," such as to make this prong analytically valuable?

The third prong is likewise not designed to measure recantation evidence, which will not be used solely to impeach. Recantation is new and different testimony. It certainly may involve credibility issues for the recanting witness, but the testimony must have some relevance beyond impeachment or it is not admissible in the first place. If the original testimony was used to impeach, the recanted testimony would tend to un-impeach, not impeach; conversely if it was not originally

impeachment testimony, it will not be solely impeachment testimony in the recanted form.

The last prong certainly applies, but the first three do not. The fourth prong is, in my judgment, sufficient to test recantation evidence, understanding that such is always of questionable credibility. However, in trying to fit the shoe of the after-discovered evidence test on the foot of recantation evidence, we end up simply with a test that is not a good fit. Thus, I offer this concurrence, suggesting the applicable rule be recobbled.

## CONCURRING AND DISSENTING OPINION

Justice CASTILLE.

I join the Majority Opinion, except with respect to its resolution of appellant's after-discovered evidence claim involving William Boyle's alleged "recantation."[1] Because I believe that this claim is resolvable now, and fails, I respectfully dissent from that portion of the opinion which orders a remand for review of Boyle's new statement.

After-discovered evidence claims may arise far earlier in a criminal matter than upon review under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541, *et seq.* Indeed, new evidence may be found in time for litigation before a direct appeal has been taken. Thus, Rule 720 (formerly Rule 1410) of the Pennsylvania Rules of Criminal Procedure provides that: "A motion for a new trial on the ground of after-discovered evidence must be filed in writing promptly after such discovery. If an appeal is pending, the judge may grant the motion only upon remand of the case." After-discovered evidence claims are also specifically deemed cognizable under the PCRA. To obtain relief upon such a claim, however, the required showing is more specific than in other after-discovered evidence contexts. The statute provides that a PCRA

---

1. As noted by the Majority, Boyle does not exactly recant his trial testimony in his affidavit. Rather, he states that he does not now remember his trial testimony and then goes on to make certain statements that expressly contradict that testimony. I use the word "recantation" for ease of analysis.

petitioner may be eligible for relief only if he pleads and proves that his conviction or sentence resulted from "[t]he unavailability at the time of trial of **exculpatory** evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S. § 9543(a)(2)(vi) (emphasis supplied). *See also Commonwealth v. Bond*, 572 Pa. 588, 819 A.2d 33, 49–50 (2002) (affidavit of alleged "recantation" witness provided no basis for PCRA relief on after-discovered evidence claim where statement merely asserted that witness had "no knowledge" of crime and thus was not exculpatory); *Commonwealth v. Clayton*, 572 Pa. 395, 816 A.2d 217, 222 (2002) (opinion announcing judgment of Court by Eakin, J.) (statistics demonstrating infrequency with which clemency is granted provided no basis for PCRA relief on after-discovered evidence claim because such statistics were not exculpatory); *Commonwealth v. Gallman*, 838 A.2d 768, 777 n. 7 (Pa.Super.2003) (citing *Commonwealth v. Yarris*, 557 Pa. 12, 731 A.2d 581, 588 (1999), and recognizing heightened standard under PCRA that alleged after-discovered evidence must be "exculpatory").[2]

I certainly agree with the Majority that recantation evidence can fail outright if the fact-finder hears the witness and deems his testimony non-credible; indeed, given the notorious unreliability of recantation testimony and the concomitant admission of perjury, and the heightened standard attendant upon it, it is an exceedingly difficult claim upon which to prevail. However, I do not believe that the **only** reason recantation testimony can fail is if it is deemed non-credible, and thus, I do not believe that a hearing and credibility findings are always required to resolve such a claim. Where the issue is resolvable as a matter of law based on the existing record—*i.e.*, where the proffered evidence, even if deemed

---

**2.** While the Majority cites to Section 9543(a)(2)(vi), it does not account for the requirement that the evidence be exculpatory. Majority op. at 518–21, 855 A.2d at 823–24 (citing *Commonwealth v. Abu–Jamal*, 553 Pa. 485, 720 A.2d 79, 94 (1998)). I recognize that the *Abu–Jamal* Court followed the same course—*i.e.*, cited the PCRA yet quoted the lesser standard. Any past lack of precision, however, does not alter the plain requirements of Section 9543(a)(2)(vi).

credible, would not meet the PCRA standard—a remand is not necessary.

Even assuming the best possible scenario for appellant upon remand—*i.e.*, that Boyle would repeat his "can't recall recantation" under oath before the PCRA judge, and his necessary admission that he perjured himself at trial; **and** that the PCRA judge would find Boyle's new testimony credible—PCRA relief still cannot issue, as a matter of law, because: (1) Boyle's new account is not exculpatory; and (2) it is not of such a nature that it likely would have changed the outcome of the trial. There is nothing in the recantation tending to **exonerate** appellant in Boyle's belated claim, contrary to his trial testimony, that **he** did not provide appellant with a gun similar to the never-found murder weapon on the day of the murder. Moreover, as the Majority makes clear in rejecting other of appellant's claims, the direct evidence of appellant's guilt in this case was "abundant," including appellant's detailed confession, which this Court recognized on direct appeal was the " 'critical and most damaging evidence introduced at trial'." Majority op. at 508, 856 A.2d at 817 (quoting *Commonwealth v. D'Amato*, 514 Pa. 471, 526 A.2d 300, 304 (1987)). That devastating confession was corroborated by eyewitness testimony and by appellant's post-murder flight evidencing a consciousness of guilt. While Boyle's testimony that he provided appellant with a gun similar to the murder weapon was circumstantial evidence that was helpful in securing the conviction, offering Boyle's new statement to contradict that testimony would not likely lead to a different verdict. The recanting statement—"I did not give appellant a gun"—is not relevant **except** to impeach Boyle's former relevant testimony that he did, in fact, give appellant a gun. Furthermore, Boyle's recantation, even if admitted, would not erase the former testimony if the matter were retried. Rather, a new jury would be faced with the same damning confession, the same corroborating eyewitness testimony, and the same guilty post-murder conduct, accompanied still by Boyle's former testimony, admissible as substantive evidence but now im-

peached by his new story. This impeaching evidence, in my view, could not possibly change the outcome of the earlier verdict.

I recognize, as the Majority does, that the PCRA court, in an apparent oversight, did not address this claim. I also recognize our precedent suggesting that remand is appropriate where the PCRA court's failure to address a claim impedes effective appellate review; or where a failure to address the claim below (particularly in the pre-dismissal notice) has impaired the petitioner's ability to amend his PCRA petition and better develop the claim; or where the PCRA court adopts the Commonwealth's response rather than conducting an independent review. *See generally Commonwealth . v. (Craig) Williams,* 566 Pa.553, 782 A.2d 517 (2001); *Commonwealth v.(Roy) Williams,* 557 Pa.207, 732 A.2d 1167 (1999). In my view, however, this is not an instance in which the PCRA court's lapse impedes either appellant's ability to prosecute his claim or impedes this Court's present ability to resolve the claim. For the reasons stated above, the claim clearly fails as a matter of law. *See Bond,* 819 A.2d at 50; *Clayton,* 816 A.2d at 222. In such an instance, I believe a remand is futile and, consistently with this Court's recent decisions in *Commonwealth v. Rush,* 576 Pa. 3, 838 A.2d 651, 659, n. 10 (2003) (remand of claims is unnecessary, despite concerns arising under *(Craig) Williams,* where those claims involve questions of law that can be resolved on existing record); and *Commonwealth v. McGill,* 574 Pa. 574, 832 A.2d 1014, 1024–25 (2003) (remand for proper development of layered ineffectiveness claim is unnecessary where appellant has failed to prove underlying allegation of trial counsel's ineffectiveness), I would resolve the claim now.

Because I would deny relief on the after-discovered evidence claim involving Boyle, I dissent from the remand order.