J-S61002-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| LOUIS VAN REESE | |
| Appellant | No. 772 WDA 2015 |

Appeal from the PCRA Order entered May 14, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0005061-2002
CP-02-CR-0005062-2002

BEFORE:  PANELLA, J., LAZARUS, J., and MUSMANNO, J.

MEMORANDUM BY PANELLA, J.          **FILED SEPTEMBER 06, 2016**

Louis Van Reese appeals from the order denying his serial petition for post-conviction relief filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-46. We affirm.

The pertinent facts and procedural history have been summarized as follows:

> Ms. Talavia Ledbetter testified that on December 10, 2001, she, Kevin Crosby, and Lindsay [Loker] drove to the Club Classic. Once inside, a man approached Ms. [Loker] and started pulling on [her]. The witness then identified [Appellant] as the man in the club who had approached her friend. She then testified that as she and her party were leaving, [Appellant] again pulled on Ms. [Loker]. Mr. Crosby intervened and words were exchanged. Ms. Ledbetter grabbed [Appellant] and threw him to the ground. However, before Ms. Ledbetter and her party [could] leave, she claimed that she re-entered the bar to retrieve Mr. Crosby's hat. When she returned, they left the parking lot and were on Verona Road when she heard

shots and saw a white car, driven by [Appellant], following them. [Appellant] fired into the Ledbetter car and the driver, Kevin Crosby[,] was shot. The car then wrecked and Ms. Ledbetter suffered a ruptured uterus, bladder and spleen. She also had both ankles and her tibia broken. On cross-examination, she admitted drinking and that [Appellant] appeared to have been drinking. She also admitted to having filed a Civil Action against [Appellant] and the bar.

Lindsay [Loker] similarly testified that she was with Ms. Ledbetter and [Ms. Ledbetter's] boyfriend [Kevin Crosby] at Club Classic on December 11, 2001. She stated that [Appellant] grabbed her as she was exiting the ladies restroom. After describing how [Appellant] looked that night and what he was wearing, she identified him for the jury. Ms. [Loker] then testified that twenty minutes after the incident at the restroom [Appellant] stumbled into her and attempted to talk to her. [As] she and her friends left the club [Appellant] grabbed her. Ms. [Loker] related how Mr. Crosby intervened and how Ms. Ledbetter grabbed [Appellant]. She also said she recalled [Appellant] stating, "bitch, I'll fuck you up" and reached for his waist band, although she admitted that she never saw a gun.

After the incident in the parking lot, Ms. [Loker] stated that the victims got into Crosby's car and drove away. Ms. [Loker] noticed they were being followed by a white car, which looked similar to the one she had seen [Appellant] standing near, looking for his keys a short time earlier at the night club. She then explained that she heard one shot, turned and actually saw the second shot being fired at the car, but could not identify the shooter.

[Ms. Loker] then testified she remembered "coming to on Washington Boulevard and flagging down a police car." City of Pittsburgh Police Officer Paul Kirby testified that he found Ms. [Loker] and the others at 2:27 a.m.

[Ms. Loker testified] that the whole incident from leaving the bar until she flagged down the police car may have taken ten minutes. She went on to explain that she told the officer about the incident at the bar and how the car from which the shots were fired looked like the car [Appellant] got into. She also explained she suffered a

compression fracture of the spine and a radial [fracture] of her right wrist.

Mr. Kevin Crosby testified similarly that they were drinking at Club Classic when Ms. [Loker] was accosted by [Appellant]. He then testified to the incident in Club Classic's parking lot and how after getting on Allegheny River Boulevard, Lindsay "looks out the back window and I think she said somebody is following us." Crosby testified that "I looked up and into the rear view mirror and a car comes zooming in back behind me before he cut out the lights. I could see into the car it was [Appellant], and I heard four (4) shots." One bullet lodged in Mr. Crosby's head, and he also broke his left leg and two ribs.

***

[T]he defense called Darrell Holloway, Terrell Bush and Cheyenne Allen, who all testified they witnessed [Appellant] pull out [of the Club Classic parking lot] in the opposite direction from the Crosby car. [Appellant] also took the stand and admitted to drinking at Club Classic and having an encounter with Ms. [Loker] and Mr. Crosby. However, he stated he started to come towards Wilkinsburg when he decided to go to the Original (hot dog shop) in Oakland. He testified that he was not driving up Washington Boulevard on Fifth Avenue, but rather turned on Fifth Avenue from Penn Avenue when Officer [David] Meade saw him. While he admitted to fleeing and eluding the police and to drunk driving, he denied any knowledge of the shooting.

*Commonwealth v. Reese*, 929 A.2d 248 (Pa. Super. 2007), unpublished memorandum at 1-4 (citation omitted).

Based upon the above, the jury, on December 15, 2004, convicted Appellant of three counts of criminal attempt to commit homicide, three counts of aggravated assault, two counts of driving under the influence, and one count of fleeing or eluding police. On April 6, 2005, Appellant was sentenced to an aggregate term of twenty-five to sixty years of

imprisonment. Appellant filed a timely post-sentence motion. That same day, the trial court entered an order purporting to vacate Appellant's judgment of sentence "pending hearing on motion for new trial and modification of sentencing." On September 12, 2005, the clerk of courts entered an order denying the post-sentence motion by operation of law.

Appellant filed a timely appeal to this Court, and, on May 8, 2007, we rejected Appellant's sufficiency challenge and affirmed his judgment of sentence. **See Reese**, **supra**. Appellant did not file a petition for allowance of appeal. On May 29, 2008, Appellant filed a counselled PCRA petition, and PCRA counsel filed an amended PCRA petition on June 3, 2009. Following an evidentiary hearing, the PCRA court dismissed Appellant's first PCRA petition on June 30, 2009. Appellant filed a timely appeal, and, on February 10, 2011, we affirmed the order denying post-conviction relief. **See Commonwealth v. Reese**, 24 A.3d 452 (Pa. Super. 2011) (unpublished memorandum). On August 2, 2011, our Supreme Court denied Appellant's petition for allowance of appeal. **See Commonwealth v. Reese**, 26 A.3d 483 (Pa. 2011).

On November 7, 2011, Appellant filed a counseled "Defendant's Motion for Imposition of Sentence," wherein he contended that he had not been lawfully sentenced because his original sentence had been vacated and never re-imposed. On April 4, 2012, the trial court denied Appellant's motion. Appellant filed a timely appeal to this Court. Treating the motion as a request for *habeas corpus* relief outside the parameters of the PCRA, this

Court concluded that the trial court's order vacating Appellant's sentence was a legal nullity. We therefore affirmed the order denying Appellant's motion. **See Commonwealth v. Reese**, 96 A.3d 1083 (Pa. Super. 2014) (unpublished memorandum). On August 7, 2014, our Supreme Court denied Appellant's petition for allowance of appeal. **See Commonwealth v. Reese**, 97 A.3d 744 (Pa. 2014).

On September 22, 2014, Appellant filed a "Motion to Resume PCRA Proceedings," in which he sought to continue seeking relief via a *pro se* PCRA petition he had filed during the pendency of his latest appeal. The PCRA court appointed present counsel. PCRA counsel filed an amended PCRA petition on November 12, 2014, in which Appellant raised a newly discovered evidence claim regarding Commonwealth witness Talavia Ledbetter. The Commonwealth filed an answer, and the PCRA court held an evidentiary hearing on April 22, 2015. By order entered on May 14, 2015, the PCRA court denied Appellant's petition. This timely appeal follows.

Appellant raises the following issue:

1. Did the [PCRA] court err in denying Appellant's PCRA petition since [Talavia] Ledbetter provided newly discovered evidence, in an affidavit and at the 4/22/15 PCRA hearing, recanting her trial testimony that identified Appellant as the shooter, since she never observed the identity of the shooter, the identity of the shooter was told to her by others, her mind was compromised by prescribed medications due to her serious injuries, and she was coerced by the Commonwealth to testify at Appellant's trial, despite the fact that she had no personal knowledge of the identity of the shooter. If the jury had heard this testimony, it

- 5 -

> would likely not have convicted Appellant of attempted homicide and related crimes?

Appellant's Brief at 3 (excess capitalization omitted).

This Court's standard of review regarding an order dismissing a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. **See Commonwealth v. Halley**, 870 A.2d 795, 799 n.2 (Pa. 2005). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. **See Commonwealth v. Carr**, 768 A.2d 1164, 1166 (Pa. Super. 2001). Moreover, a PCRA court may decline to hold a hearing on the petition if the PCRA court determines that petitioner's claim is patently frivolous and is without a trace of support either in the record or from other evidence. **See Commonwealth v. Jordan**, 772 A.2d 1011, 1104 (Pa. Super. 2001).

Because this is Appellant's second petition for post-conviction relief, he must meet a more stringent standard. "A second or any subsequent post-conviction request for relief will not be entertained unless a strong *prime facie* showing is offered to demonstrate that a miscarriage of justice may have occurred." **Commonwealth v. Burkhardt**, 833 A.2d 233, 236 (Pa. Super. 2003) (*en banc*) (citations omitted). "A petitioner makes a *prime facie* showing if he demonstrates that either the proceedings which resulted in his conviction were so unfair that a miscarriage of justice occurred which

no civilized society could tolerate, or that he was innocent of the crimes for which he was charged." *Id*. (citations omitted).

The timeliness of a post-conviction petition is jurisdictional. *See Commonwealth v. Hernandez*, 79 A.3d 649, 651 (Pa. Super. 2013). Generally, a petition for relief under the PCRA, including a second or subsequent petition, must be filed within one year of the date the judgment is final unless the petition alleges, and the petitioner proves an exception to the timeliness requirement. *See* 42 Pa.C.S.A. § 9545(b)(1)(i)-(iii). A PCRA petition invoking one of these statutory exceptions must "be filed within 60 days of the date the claims could have been presented." *Hernandez*, 79 A.3d 651-52 (citations omitted). *See also* 42 Pa.C.S.A. § 9545(b)(2). Finally, exceptions to the PCRA's time bar must be pled in the petition and may not be raised for the first time on appeal. *See Commonwealth v. Burton*, 936 A.2d 521, 525 (Pa. Super. 2007). *See also* Pa.R.A.P. 302(a).

Appellant's judgment of sentence became final on June 8, 2007, when the thirty-day time period for filing a petition for allowance of appeal with our Supreme Court expired. *See* 42 Pa.C.S.A. § 9545(b)(3). Thus, Appellant had until June 8, 2008, to file a timely PCRA petition. As Appellant filed the instant petition in 2013, it is patently untimely unless he has satisfied his burden of pleading and proving that one of the enumerated exceptions applies.

Within his brief, Appellant does not acknowledge that his latest petition is untimely and makes no mention of the PCRA's time bar exceptions. Instead, although arguing "newly-discovered evidence," Appellant cites a case from this Court that conflates eligibility for the PCRA's time bar exceptions with the eligibility for relief, via a *timely* PCRA petition, based upon "after-discovered evidence" pursuant to 42 Pa.C.S.A. § 9543(a)(vi). ***See*** Appellant's Brief at 17 (citing ***Commonwealth v. Holmes***, 925 A.2d 507 (Pa. Super. 2006)). Each of these sections of the PCRA requires different analyses.

When considering a PCRA's petitioner's claim that he or she has established an exception to the PCRA's time bar under § 9545(b)(1)(ii), the petitioner must establish only that the facts upon which the claim are predicated were unknown to him, and that he could not have ascertained the facts earlier despite the exercise of due diligence. ***See Commonwealth v. Bennett***, 930 A.2d 1264, 1270-1272 (Pa. 2007). The determination of timeliness does not require a merits analysis. ***See Commonwealth v. Abu-Jamal***, 941 A.2d 1263, 1268 (Pa. 2008).

Here, Appellant does not demonstrate the exercise of due diligence. Although he asserts he filed his latest PCRA petition within sixty days of the discovery of Ms. Ledbetter's purported recantation, ***see*** Appellant's Brief at 18, he offers no explanation as to why, with the exercise of due diligence, this information could not have been discovered earlier. We could affirm the

PCRA court's order denying post-conviction relief on this basis alone. *See*

***Commonwealth v. Doty***, 48 A.3d 451, 456 (Pa. Super. 2012) (explaining

that this Court can affirm the PCRA court's denial of post-conviction relief on

any basis).

Nevertheless, even if the PCRA court had found Appellant met the

timeliness exception for newly-discovered evidence, we would agree with the

PCRA court's ultimate conclusion that Appellant did not demonstrate he is

entitled to post-conviction relief based upon Ms. Ledbetter's affidavits or

testimony at the evidentiary hearing.

A petitioner is eligible for relief under the PCRA if he or she can

establish the "unavailability at the time of trial of exculpatory evidence that

has subsequently become available and would have changed the outcome of

the trial if it had been introduced." 42 Pa.C.S.A. § 9543(a)(2)(vi). This Court

has explained the test to be applied to such a claim as follows:

> To obtain relief based on after-discovered evidence, an appellant must demonstrate that the evidence: (1) could not have been obtained prior to the conclusion of trial by the exercise of reasonable due diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

***Commonwealth v. Foreman***, 55 A.3d 532, 537 (Pa. Super. 2012) (citation

omitted). "The test is conjunctive; the appellant must show by a

preponderance of the evidence that each of these factors has been met in

order for a new trial to be warranted." ***Id***. (citation omitted). Moreover,

"when reviewing the decision to grant or deny a new trial on the basis of after-discovered evidence, an appellate court is to determine whether the PCRA court committed an abuse of discretion or error of law that controlled the outcome of the case." *Id*. (citation omitted).

In concluding that Appellant failed to meet this burden, the PCRA court noted that Ms. Ledbetter's trial testimony identifying Appellant as the shooter was corroborated by the identification testimony of Mr. Crosby, as well as an inference from Ms. Loker's testimony that Appellant was the occupant of the vehicle from which the shots were fired. Thus, Ms. Ledbetter's recantation of her trial testimony would not have likely resulted in a different verdict if a new trial was granted.

Moreover, the PCRA court did not find her recantation testimony to be credible. We cannot disturb this determination. *See Commonwealth v. D'Amato*, 856 A.2d 806, 825-826 (Pa. 2004) (explaining that the PCRA court as fact-finder is in a superior position to make the initial assessment of the importance of the recanting witness's testimony to the outcome of the case). Nevertheless, the PCRA court's credibility determination is supported by our review of the evidentiary hearing—Ms. Ledbetter was inconsistent with her testimony regarding when she stopped taking the drugs that purportedly compromised her ability to remember the shooting incident. In addition, we note that no medical evidence was introduced at the hearing to support Ledbetter's time line regarding the treatment for her injuries. *See* N.T., 4/22/15, at 5-29.

In sum, for all of the above reasons, the PCRA court correctly determined that Appellant was ineligible for relief. We therefore affirm the PCRA court's order denying Appellant's PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/6/2016