J-S39012-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ERNEST JAMAL NELSON, | |
| Appellant | No. 1220 WDA 2016 |

Appeal from the PCRA Order Entered February 1, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):
CP-02-CR-0003618-2000
CP-02-CR-0017102-1999

BEFORE:  BENDER, P.J.E., BOWES, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                      **FILED JULY 7, 2017**

Appellant, Ernest Jamal Nelson (hereinafter, "Nelson"), appeals from the post-conviction court's February 1, 2016 order denying, without a hearing, his petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  After careful review, we are compelled to vacate and remand for further proceedings.

> At approximately 1:00 a.m., on April 7, 1999, Officer Frank Chianese of the Swissvale Police Department responded to a call of a shooting at Frankie's Bar in the Swissvale section of eastern Allegheny County.  He observed a man lying on the ground in front of a poker machine (later identified as Kevin Green ["Green"]), a man lying by the bar (later identified as Steve [R]oberson), and two women lying on the stairs.

---

[*] Retired Senior Judge assigned to the Superior Court.

LaDawn King, Kristi Leftwich, Steve Roberson, Shawn Hall and Edward Witcher testified that they were patrons in the bar on April 7, [1999]. Ms. King was shot in the leg as she was running up the stairs. She suffered a shattered fibula and was hospitalized for two days. Ms. Leftwich was shot in the hip area and bullet fragments remain in her hip. Mr. Roberson, who stated that he observed an argument in the bar earlier in the evening, was also shot in the leg; however, he did not see anyone with a gun. Mr. Hall was shot in the lower back, resulting in a hospital stay of more than a week and over five months in a rehabilitation facility. Mr. Witcher was shot in the stomach and the shoulder.

Abdulrezzak Shakir, a forensic pathologist with the Allegheny County Coroner's Office, testified that he performed an autopsy on the body of [Green]. [Green] suffered a non-fatal gunshot wound to the left arm and a fatal gunshot wound to the head[,] which fractured his skull.

Louis Gilmore stated that he was at Frankie's Bar at the time of the shooting. He further stated that he knows [Nelson] by his nickname[,] "Mall-D." He identified the shooter as "Mall-D." He estimated that ten shots were fired and he was positive that "Mall-D" had the weapon.

Detective Regis Kelly, of the Allegheny County Police Department testified that he was contacted by Thomas Dean, who indicated that he had information regarding a homicide. He and Detective Lee Yingling took a taped statement from Mr. Dean, while Mr. Dean was incarcerated at the Allegheny County Jail. In the taped statement, which was played for the jury, Mr. Dean stated that while he and [Nelson] were incarcerated in the jail, they had discussions about the shooting at Frankie's Bar. [Nelson] told [Dean] that he and a friend named "Woo" were at the bar with two girls, Jackie and Starr (who were sisters). They got into a confrontation with "some Lang boys" and when [Nelson] thought that one of them reached for a gun, he grabbed his own gun, began firing and ran out the door. Detective Kelly testified further about[] his interviews with [Nelson]. Specifically, when he interviewed [Nelson] on November 19, 1999, [Nelson] stated that he was not at Frankie's Bar at the time of the shooting; however, he knew that "Rock," whose name is Damion [Nix], was the shooter. When [Nelson] was confronted with conflicting information, he admitted that he

was at the bar at the time of the shooting. He said that he was returning from the bathroom and he heard gunshots. He pulled out his weapon and as he fell to the ground the weapon discharged accidentally. When pressed further, [Nelson] finally acknowledged that there was trouble in the bar and he pulled out his gun and fired it several times.[1]

At trial, the Commonwealth presented evidence that Nelson was associated with a gang known as the Wheeler Street Crips, and that Green was associated with a gang known as the North Lang Crips. The Commonwealth also presented evidence of an ongoing feud between the two gangs.

*Commonwealth v. Nelson*, No. 1996 WDA 2000, unpublished memorandum at 1-3 (Pa. Super. filed February 21, 2002) (quoting Trial Court Opinion, 4/18/01, at 2-3) (citations to the record omitted).

Based on this evidence, a jury convicted Nelson of one count of voluntary manslaughter, five counts of aggravated assault, and one count of carrying a firearm without a license. On October 25, 2000, he was sentenced to an aggregate term of 32 to 70 years' imprisonment. On direct appeal, this Court affirmed Nelson's judgment of sentence, and our Supreme Court subsequently denied his petition for allowance of appeal. *Commonwealth v. Nelson*, 797 A.2d 1024 (Pa. Super. 2002) (unpublished memorandum), *appeal denied*, 806 A.2d 860 (Pa. 2002).

On August 23, 2003, Nelson filed his first, counseled PCRA petition. That petition was denied on March 4, 2004, and after this Court affirmed on

_____

[1] We note that Nelson's statement to Detective Kelly was not written or tape recorded. Detective Kelly testified that Nelson was unwilling to "put the interview on tape[,]" despite twice being asked to do so by the detective. N.T. Trial, 7/17-7/19/00, at 338.

appeal, our Supreme Court denied Nelson's subsequent petition for allowance of appeal. *See Commonwealth v. Nelson*, 873 A.2d 770 (Pa. Super. 2005) (unpublished memorandum), *appeal denied*, 877 A.2d 461 (Pa. 2005)).

> On February 9, 2011, [Nelson] filed a second *pro se* PCRA petition alleging the existence of newly-discovered exculpatory evidence. The PCRA court appointed counsel, who filed an amended PCRA petition on July 14, 2011. The PCRA court held a hearing on October 25, 2011, where [Nelson] and a witness, Alvin Dix, testified that Dix's deceased brother, Damion Dix, was responsible for the shooting for which Appellant had been convicted. The PCRA court, determining that their testimony was not credible, denied the petition on November 3, 2011.

*Commonwealth v. Nelson*, No. 1842 WDA 2011, unpublished memorandum at 2-3 (Pa. Super. filed May 24, 2012).

Appellant filed a timely appeal from the denial of this second PCRA petition, and this Court affirmed, concluding that the PCRA court's credibility determinations were supported by the record, and that Nelson "failed to provide newly-discovered evidence because, even if admissible, [Alvin] Nix's testimony would not 'likely compel a different verdict.'" *Id.* at 5, 6 (quoting *Commonwealth v. D'Amato*, 856 A.2d 806, 823 (Pa. 2004) ("To obtain relief based upon newly-discovered evidence under the PCRA, a petitioner must establish that: (1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict.")). Notably, neither the PCRA court, nor this Court, conducted any assessment

of whether Nelson's second PCRA petition, asserting the after-discovered evidence of Alvin Nix's statement, met an exception to the PCRA's one-year time-bar, discussed in detail *infra*. **See** 42 Pa.C.S. § 9545(b).

On September 10, 2015, Nelson filed a third, *pro se* PCRA petition, which underlies the present appeal. In that facially untimely petition, Nelson maintained that he satisfied the 'new fact' exception to the PCRA's one-year time-bar. Specifically, Nelson asserted that he had "received information" that an individual named Ronald Robinson "was with Damion Nix[] when Damion shot Kevin Green." **See** PCRA Petition, 9/10/15, at 3. Nelson further averred that he "sought to have this information either confirmed or denied[ b]y Ronald Robinson[,]" and after "[e]xploring all avenues," he finally received "in early September of 2015," an affidavit from Robinson. **Id.**

Appellant attached Robinson's signed affidavit (dated August 28, 2015) to his petition. Therein, Robinson stated that he and Damion Nix had gone to Frankie's Bar on the night of the shooting and, once inside the bar, Robinson had given Nix one of two guns that Robinson had secreted into the bar. **See** PCRA Petition, 9/10/15 (Sworn Affidavit of Ronald Robinson). Robinson stated that he and Nix then proceeded to the dance floor, where they saw Kevin Green and "[a]n argument immediately broke out between

[Green] and [Nix]." *Id.*[2] Robinson claimed that he and Nix "both pulled out our guns and started shooting." *Id.* Robinson explained that after the shooting, he and Nix fled out a back door of the bar and "drove to the Rakin [*sic*] Bridge," where Robinson "threw both guns into the river." *Id.*

On October 22, 2015, the PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss Nelson's petition without a hearing, stating only that his petition "is patently frivolous and without support on the record…." Rule 907 Notice, 10/22/15, at 1. Nelson filed a *pro se* response, but on February 1, 2016, the PCRA court issued an order dismissing his petition.

Thereafter, the PCRA court granted Appellant two, 60-day extensions of time within which to file his notice of appeal with this Court. Appellant ultimately filed his notice of appeal within the time-frame mandated by the PCRA court. It does not appear from the record that the PCRA court directed Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. However, on September 22, 2016, the PCRA court issued an opinion, the entirety of which stated as follows:

> The Petitioner, Ernest Nelson, has appealed this Court's dismissal of his most recent Post-Conviction Relief Act (PCRA) petition. This court has reviewed the petition and finds that it is time-barred for the same reasons as stated in the attached previous opinion dismissing a prior PCRA.

---

[2] Robinson explained that Nix wanted revenge against Green because Green had shot and wounded Nix "in early 1999." *Id.*

PCRA Court Opinion (PCO), 9/22/16, at 1 (unnecessary capitalization and emphasis omitted). To this opinion, the court attached its opinion from 2012, in which it explained the basis for its denial of Nelson's second PCRA petition, as follows:

> The sole issue on appeal is the allegation of an abuse of discretion in denying the Petition. This [c]ourt, during the evidentiary hearing, heard all of the testimony and observed all of the witnesses and concluded that the testimony of [Nelson], and witness Alvin [N]ix[,] was incredible. A credibility determination adverse to [Nelson] requires dismissal of the Petition and is not an abuse of discretion. *See Commonwealth v. Robinson*, 780 A.2d 675[] (Pa. Super[.] 2001).

PCRA Court Opinion, 1/10/12, at 4-5.

Nelson at some point obtained counsel, who filed a brief on his behalf raising the following issue for our review: "Should the PCRA court have granted an evidentiary hearing before dismissing the petition on credibility?" Appellant's Brief at 4.

This Court's standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. *Commonwealth v. Ragan*, 923 A.2d 1169, 1170 (Pa. 2007). We must begin by addressing the timeliness of Appellant's petition, because the PCRA time limitations implicate our jurisdiction and may not be altered or disregarded in order to address the merits of a petition. *Commonwealth v. Bennett*, 930 A.2d 1264, 1267 (Pa. 2007) (stating PCRA time limitations implicate our jurisdiction and may not be altered or disregarded to address the merits of

the petition). Under the PCRA, any petition for post-conviction relief, including a second or subsequent one, must be filed within one year of the date the judgment of sentence becomes final, unless one of the following exceptions set forth in 42 Pa.C.S. § 9545(b)(1)(i)-(iii) applies:

> **(b) Time for filing petition.--**
>
> (1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:
>
> > (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
> >
> > (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
> >
> > (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii). Any petition attempting to invoke one of these exceptions "shall be filed within 60 days of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).

Here, Nelson's judgment of sentence became final in 2002, and thus, his present petition filed in 2015 is clearly untimely. For this Court to have jurisdiction to review the merits thereof, Nelson must prove that he meets

one of the exceptions to the timeliness requirements set forth in 42 Pa.C.S. § 9545(b).

In his PCRA petition, Nelson invoked the after-discovered fact exception of section 9545(b)(1)(ii). However, the PCRA court never ruled on whether Nelson satisfied that exception. Instead, the court improperly dismissed his after-discovered evidence claim on the merits, cursorily deeming it 'frivolous' and unsupported by the record. Additionally, while the court's Rule 1925(a) opinion refers to Nelson's petition as being 'time-barred,' the court relies on the rationale set forth in its 2012 opinion, which made no mention of the timeliness of Nelson's petition.

Because the PCRA court never ruled on the timeliness of Nelson's current petition, we conclude that remand is necessary. It is well-settled that "the PCRA's timeliness requirements are jurisdictional in nature, and a court may not address the merits of the issues raised if the PCRA petition was not timely filed." *Commonwealth v. Copenhefer*, 941 A.2d 646, 648 (Pa. 2007). Moreover, "[t]here can be no reasonable dispute that the due diligence inquiry [of the after-discovered fact exception] is fact-sensitive and dependent upon the circumstances presented." *Commonwealth v. Burton*, 121 A.3d 1063, 1070 (Pa. Super. 2015) (*en banc*). Our Supreme Court has also consistently stressed that "[t]he PCRA court's factual determinations are entitled to deference…." *Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009). Because in this case, we have no factual findings regarding the timeliness of Nelson's petition - and, in particular,

whether he exercised due diligence - we conclude that it is appropriate to remand this case for the PCRA court to render such findings in the first instance.[3]

Therefore, we vacate the PCRA court's order dismissing Nelson's petition and remand for a hearing, at which the PCRA court must first assess the timeliness of Nelson's petition.[4] If the court concludes that Nelson has met the timeliness exception of section 9545(b)(1)(ii), it must then determine if Robinson's testimony satisfies the four-pronged test for

_____

[3] We also mention our concern with the fact that, in assessing the merits of Nelson's petition, the PCRA court provided no discussion of its reason(s) for dismissing his claim as 'frivolous.' Even more troubling is the court's suggestion in its opinion that it rejected Nelson's claim because it had previously concluded that *Alvin Nix* was incredible. Nix and Robinson presented wholly distinct information in their affidavits, and the PCRA court did not hold a hearing to assess the credibility of *Robinson's* claims. Thus, even if the PCRA court had been permitted to assess the merits of Nelson's petition, we would conclude that it abused its discretion by rejecting his after-discovered evidence claim for the reason that it did, and without conducting a hearing.

[4] A hearing on the timeliness of Nelson's petition is warranted, as there is a genuine issue of material fact regarding his due diligence in discovering Robinson. In Nelson's *pro se* petition, he averred that he obtained information that Robinson was with Nix on the night of the shooting, and he then pursued 'all avenues' of contacting Robinson to confirm or refute this claim, which led to his receiving Robinson's affidavit. **See** PCRA Petition, 9/10/15, at 3. Moreover, in his appellate brief, Nelson stresses that "[n]o diligence in the world could have made Ronald Robinson admit to this crime until he was ready." Nelson's Brief at 13. We deem these statements sufficient to demonstrate an issue of material fact regarding whether Nelson acted diligently in obtaining Robinson's statement.

obtaining a new trial based on after-discovered evidence. **See D'Amato**, 856 A.2d at 823.

Order vacated. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/7/2017