J-S68006-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LELAND DAVIS | : | |
| | : | |
| Appellant | : | No. 31 WDA 2019 |

Appeal from the PCRA Order Entered November 7, 2018
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0015949-2010

BEFORE:  GANTMAN, P.J.E., LAZARUS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                **FILED DECEMBER 20, 2019**

Leland Davis (Davis) appeals the order of the Allegheny County Court of Common Pleas (PCRA court) denying his petition for relief filed pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  The order is affirmed.

**I.**

This case arises from a 2008 shooting at the Elks Club in Allegheny County.[1]  The image of a man fitting Davis' general description was captured by a surveillance video in the club.  The video showed that the victim was

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The facts of the underlying criminal offenses are gleaned from our decision in Davis' direct appeal.  **See Commonwealth v. Davis**, 618 WDA 2013 (Pa. Super. May 11, 2015) (unpublished memorandum).

fatally shot once in the head. Nearby police officers heard the gunshot and reported to the area.

An officer saw Davis running from the area while holding a pistol. The officer ordered Davis to stop but had to chase Davis on foot when he did not comply. Davis eluded the officer, but dropped the firearm and some articles of clothing in the process. The officer who pursued Davis was unable to immediately identify him.

Jameelah Miller (Ms. Miller) was shown the surveillance video footage of the shooting, and she told police that she recognized the shooter as Davis. Police used that identification to obtain a warrant to take a DNA sample from Davis, who was then charged with one count of third-degree murder, one count of carrying a firearm without a license, and one count of person not to possess a firearm.

Davis filed a motion to suppress in September 2011 and it was denied. A jury trial was held in 2012 and Davis was found guilty as charged. On the murder count, he received a prison term of 20-40 years. Davis received a consecutive term of three to six years as to the count of carrying a firearm without a license. He received no further penalty on the remaining count.

Davis filed a post sentence motion and it was denied. He then timely filed a notice of appeal and this Court affirmed the judgement of sentence. Davis did not file a petition for allowance of appeal.

The PCRA has summarized the subsequent post-conviction proceedings as follows:

On September 29, 2015, appellate counsel . . . filed a [PCRA petition] alleging after discovered evidence pursuant to 42 Pa.C.S. §9545(b)(1)(ii) [and 42 Pa.C.S. § 9543(a)(2)(vi)]. . . .

On December 5, 2016, [Davis] filed a second PCRA petition. On April 7, 2017, the Commonwealth filed an Answer to the Post-Conviction Relief Act petitions. On July 18, 2017, [Davis] filed an "Amended PCRA Petition-After Discovered Evidence" . . . . On June 11, 2018, [Davis] appeared before the [PCRA] Court for an evidentiary hearing on [Davis'] PCRA claim.

At the evidentiary hearing, the [PCRA] Court heard testimony from witnesses: [Jameelah] Miller, Detective Anthony Perry, Detective Patrick Kinavey, and Allegheny County Police Inspector Christopher Kearns. . . .

[I]t it is alleged that on September 15, 2015, Ms. Miller [a witness at Davis' trial] informed a representative for then appellate counsel that she never viewed a video in the present case nor identified the [Davis] to law enforcement.

In support of this contention, [Davis] attached a certified statement from Ms. Miller to his December 5, 2016, PCRA petition. The certified statement alleged that she was shown Allegheny County police reports prepared in relation to the present case by a private investigator for [Davis] wherein she is alleged to have identified [Davis] in a surveillance video. Ms. Miller contended that she never met with law enforcement relative to the case and was not shown any video nor did she ever identify [Davis] in that video.

[Davis] further alleged that Ms. Miller, who was acting as a cooperating informant, had provided false testimony in the trial of Defendant Derrick Elliot in an unrelated case falsely identifying him as the murderer. In support of this contention, [Davis] attached a notarized affidavit from [Ms.] Miller to his Amended PCRA petition filed on July 18, 2017.

At [Davis'] evidentiary hearing, Ms. Miller testified that at the time of the murder she was having a sexual relationship with an

- 3 -

Allegheny County Homicide detective for money while she was in witness protection in relation to another case.

She testified that the detective asked her if she knew [Davis] and was shown a videotape of a bar in the McKeesport area but that [Davis] was not in the video; however, he was in a photo array he showed her. [Davis] conceded that she had previously informed the former prosecutor that she was being threatened by individuals involved in [Davis'] case, that someone had been hired to kill her because of her involvement, and that her brother was pressuring her to "fix things" for [Davis]. Ms. Miller testified that she was testifying at the hearing because of the threats she was receiving and to "clear" her name.

Detective Perry testified that he showed the video in question to Ms. Miller on July 8, 2010, and later showed her a photo array on July 12, 2010. Detective Perry testified that Ms. Miller did, in fact, identify [Davis] in the video and also denied he was the detective who had a sexual relationship with Ms. Miller.

Detective Kinavey testified that he too was not the detective who had a sexual relationship with Ms. Miller, and that he has spoken with Ms. Miller in relation to the present PCRA petition and the claim that she was recanting in this case as well as an unrelated case. Ms. Miller informed Detective Kinavey that she was upset because her name was involved with [Davis'] case and that her name had been released in documents as a potential witness. She further indicated that she was being threatened and had been picked up by an individual, driven to a notary, and was forced to sign a statement in an unrelated case. He indicated he was the only one to have direct contact with Ms. Miller while in witness protection, was the one to transport her to hearings, move her, and distribute any funds given for reimbursement. He additionally stated he was unaware that she had a sexual relationship with any Allegheny County Homicide detective.

Inspector Kearns testified that he investigated the allegations that Ms. Miller had a sexual relationship with a detective from the county homicide division. The investigation revealed that the sexual relationship did not occur with a county detective but had occurred with a Pittsburgh Police detective. Further, there was no evidence that particular city detective had been involved in any Allegheny County cases in which Ms. Miller was a witness. Additionally, Inspector Kearns indicated that the Allegheny County

> Homicide Unit is separate from the Pittsburgh Homicide Unit and unless there is a joint investigation or specific request that the units do not have access to each other's investigation files.

PCRA Court Notice of Intent to Dismiss, 9/20/2018, at 1-4. (Internal citations omitted).

The PCRA court found the testimony of Detective Perry, Detective Kinavey and Inspector Kearns credible. *Id*. at 4.[2] The PCRA court found Ms. Miller's testimony to be "wholly incredible." *Id*. Importantly, the PCRA court determined that Ms. Miller recanted her 2010 identification of Davis as the shooter "due to threats she had received both from unnamed individuals and her brother." *Id*. at 4-5. Due to the weight it afforded to the testimony of the officers, the PCRA denied Davis' petition. *See* PCRA Court Order, 11/7/2018.

Davis filed his notice of appeal over 30 days after the PCRA court had entered the order now at issue. However, the PCRA court granted Davis' petition for reinstatement of his appellate rights, *nunc pro tunc*, due to administrative delays in providing Davis notice of the order. *See* PCRA Court Order, 1/2/2019. Davis then timely filed his notice of appeal and both Davis and the PCRA court complied with Pa.R.A.P. 1925.

---

[2] The PCRA Court relied on its Notice of Intent to Dismiss *in lieu* of a 1925(a) opinion. *See* PCRA Court order, 5/2/2019.

**II**.

The main issue here is whether the PCRA court erred in rejecting Davis' claim that after-discovered evidence entitled him to PCRA relief.[3] Such relief is only available where a petitioner can establish that:

> (1) The evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict.

**Commonwealth. v. D'Amato,** 856 A.2d 806, 823 (Pa. 2004) (citation and quotation marks omitted).[4] As set forth in the PCRA, a petitioner must prove "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S. § 9543(a)(2)(vi).

Based on the above facts and authorities, we find that Davis cannot establish the third and fourth prongs of the PCRA's after-discovered evidence

---

[3] "Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error." **Commonwealth v. Mason**, 130 A.3d 601, 617 (Pa. 2015) (citation omitted). The PCRA court's credibility determinations are binding on this Court as long as they are supported by the record. **Id**.

[4] The PCRA's jurisdictional time-bar precludes claims for relief asserted more than one year after the date the petitioner's judgment of sentence becomes final. **See** 42 Pa.C.S. § 9545(b)(1). However, Davis clearly satisfies an exception to the time-bar because the subject recantation was indisputably unknown to Davis within the filing period and could not have been ascertained by the exercise of due diligence. **See id**. at § 9545(b)(1)(ii); **see generally Commonwealth v. Bennett**, 930 A.2d 1264, 1270–73 (Pa. 2007).

test. *See Amato*, 856 A.2d at 823; 42 Pa.C.S. § 9543(a)(2)(vi). While Ms. Miller's recantation could not have been discovered prior to the time she made it (first prong), and the evidence is not cumulative (second prong), Davis fails the third prong because he is using this evidence solely to impeach the credibility of Ms. Miller and the investigating officers.

Davis also cannot establish the fourth prong – that the evidence would compel a different result – because the PCRA court found that Ms. Miller was simply not believable when she testified that police coerced her into implicating Davis. Ms. Miller was a trial witness who had initially identified Davis in a surveillance video, leading to his arrest and conviction. A few years after Davis' convictions, Ms. Miller stated in a certified statement that she had falsely identified Davis from surveillance video footage of the murder. Ms. Miller explained that a homicide detective assigned to the subject case had forced her into a sexual relationship and demanded that she incriminate Davis. *See* PCRA Hearing, 6/11/2018, at 14-17.

However, the PCRA court heard evidence from the Commonwealth's witnesses that Ms. Miller was romantically involved with a Pittsburgh police officer who had nothing to do with Davis' case. *Id*. at 23-24; 26-30; 32-33. Ms. Miller also testified that her own brother had pressured her to exonerate Davis, and that she had previously been threatened by an unnamed individual into recanting testimony in an unrelated case. *Id*. at 16-19.

On appeal, this Court is bound by a PCRA court's credibility determinations as long as they are supported by the record. ***See Commonwealth v. Wholaver***, 177 A.3d 136, 144 (Pa. 2018) ("The PCRA court's credibility determinations, when supported by the record, are binding on this Court."). The PCRA court's determination that the Commonwealth's witnesses were more credible than Ms. Miller finds ample record support.

Additionally, aside from Ms. Miller's visual identification of Davis as the shooter, the Commonwealth linked him to the murder weapon with DNA evidence. Davis was also linked to DNA found on clothing worn by the shooter. Thus, because Ms. Miller's dubious recantation would not likely compel a different verdict at a new trial, the subject petition was properly denied.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/20/2019