J-S09040-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SIDDIQ SHELTON | : | |
| | : | |
| Appellant | : | No. 1341 EDA 2020 |

Appeal from the PCRA Order Entered July 7, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0013343-2014

BEFORE: OLSON, J., McCAFFERY, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: **FILED: APRIL 19, 2021**

Siddiq Shelton ("Shelton") appeals from the Order dismissing his Petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA"). *See* 42 Pa.C.S.A. §§ 9541-9546. We affirm.

The PCRA court summarized the factual history underlying this appeal as follows:

> On July 28, 2014, the decedent, Elisha Bull [("Bull")], along with Shantee Porter [("Shantee")], Francheska Quinones [("Quinones")], Tatiyana Porter [("Tatiyana")], Michel Benjamin [("Benjamin")], Tynisha Moore, and an eight[-]month[-]old baby were hanging out on the porch of 4902 North Front Street in Philadelphia, Pennsylvania. At approximately 12:19 a.m., [Shelton] and an unknown male approached the porch and began shooting at the individuals on the porch. After shooting … at least 15 times, [Shelton and the unknown male] fled. Quinones was shot once in the thigh. Tatiyana [] was shot in her arm and her ankle. Benjamin was shot in his thigh. Bull was shot a total of [six] times[:] twice in the head, once in the collarbone, once in the chest, once in the left wrist, and once in the right ankle. All four individuals were rushed to the Temple Hospital. Bull was

pronounced dead shortly thereafter. The medical examiner determined that the cause of death was from multiple gunshot wounds.

Following the shooting, the police recovered surveillance footage of the shooting. They also conducted multiple interviews of the surviving victims. Quinones identified [Shelton] as one of the shooters from a photo array. Benjamin also implicated [Shelton] as one of the shooters. Tatiyana [] selected two individuals from a photo array, one of whom was [Shelton], and stated that the shooter was one of th[e] two individuals [that she identified]. Finally, while Shantee [] was preparing for trial with Detective Laura Hammond [("Detective Hammond")] on September 12, 2016, just days before trial commenced, she told Detective Hammond that Benjamin had told her that [Shelton] was one of the shooters.

PCRA Court Opinion, 9/16/20, at 3-4 (footnotes and citations omitted).

On September 21, 2016, after a jury trial, Shelton was found guilty of first-degree murder and related offenses. Shelton subsequently entered into a sentencing agreement with the Commonwealth, wherein Shelton agreed to waive his direct appeal rights in exchange for a life sentence in lieu of the death penalty. The trial court sentenced Shelton, in accordance with the sentencing agreement, to an aggregate term of life plus 72 to 144 years in prison.

On August 15, 2017, Shelton filed a timely, *pro se*, PCRA Petition. The PCRA court appointed counsel. On February 28, 2019, after a change in counsel, PCRA counsel filed an Amended PCRA Petition. In the Amended Petition, Shelton alleged, *inter alia*, that he is entitled to a new trial based upon after-discovered evidence of Detective James Pitts's ("Detective Pitts") habit and routine of coercing witnesses into signing false statements.

- 2 -

On February 28, 2020, the PCRA court filed a Pa.R.Crim.P. 907 Notice of Intent to Dismiss Shelton's Petition without a hearing. On July 7, 2020, the PCRA court dismissed Shelton's PCRA Petition. Shelton filed a timely Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of errors complained of on appeal.

Shelton now presents the following claim for our review: "Did the PCRA [c]ourt err when it denied Shelton's claim of after[-]discovered evidence in the form of Detective Pitts'[s] recently revealed habit and pattern of illegally coercing false statements from witnesses?" Brief for Appellant at 2.

Shelton claims that the PCRA court erred in denying his request for a new trial based upon after-discovered evidence of Detective Pitts's "judicially recognized pattern and habit of abusing witnesses." Brief for Appellant at 9-10. Shelton asserts that he could not have discovered Detective Pitts's actions prior to his jury trial, because the Honorable Teresa Sarmina ("Judge Sarmina") did not issue her ruling in **Commonwealth v. Thorpe**[1] until after Shelton's jury trial had concluded. Brief for Appellant at 10-11. Shelton further claims that the evidence in **Thorpe** could not be considered cumulative because "Detective Pitts'[s] judicially recognized habit and pattern was not an issue in [Shelton's] trial." **Id.** at 11. Shelton argues that such evidence is not being used purely for impeachment purposes, but rather to establish Detective

---

[1] **See Commonwealth v. Thorpe**, No. CP-51-CR0011433-2008 (Phila. Cty. filed Nov. 3, 2017).

Pitts's pattern and practice of coercing witness statements. *Id.* Shelton

claims that if the jury had known of Detective Pitts's pattern, then it would

have rendered a not guilty verdict. *Id.* at 11-12.

> We review an order dismissing a petition under the PCRA in
> the light most favorable to the prevailing party at the PCRA level.
> This review is limited to the findings of the PCRA court and the
> evidence of the record. We will not disturb a PCRA court's ruling
> if it is supported by evidence of record and is free of legal error.

*Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations

omitted).

> Under the PCRA,
>
> [w]here a petition is otherwise timely, to prevail on an after-
> discovered evidence claim for relief under [42 Pa.C.S.A.
> §] 9543(a)(2)(vi), a petitioner must prove that (1) the
> exculpatory evidence has been discovered after trial and could not
> have been obtained at or prior to trial through reasonable
> diligence; (2) the evidence is not cumulative; (3) it is not being
> used solely to impeach credibility; and (4) it would likely compel
> a different verdict. *Commonwealth v. D'Amato*, 856 A.2d 806,
> 823 (Pa. 2004); *see* [*Commonwealth v.*] *Cox*, 146 A.3d [221,]
> 227-28 [(Pa. Super. 2016)] ([stating that] "[o]nce jurisdiction has
> been properly invoked, … the relevant inquiry becomes whether
> the claim is cognizable under [Section 9543] of the PCRA.").

*Commonwealth v. Burton*, 158 A.3d 618, 629 (Pa. 2017) (citation omitted).

"The test is conjunctive; the defendant must show by a preponderance of the

evidence that each of these factors has been met in order for a new trial to be

warranted." *Commonwealth v. Padillas*, 997 A.2d 356, 363 (Pa. Super.

2010) (citations omitted).

Shelton has failed to develop this claim for our review. Shelton's

appellate brief contains only boilerplate quotations of this Court's standard of

review. Indeed, Shelton's brief is devoid of any citations to the record or legal authority supporting his position, and contains only bald assertions that his claim satisfies each factor under Section 9543(a)(2)(vi) of the PCRA. *See* Pa.R.A.P. 2119(a) (providing that an appellant's argument shall include "such discussion and citation of authorities as are deemed pertinent."); *see also Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009) (stating that "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority[,] or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived."). Accordingly, Shelton's claim is waived.

Even if Shelton had preserved this claim for our review, the PCRA court addressed it as follows:

> The record demonstrates … that Detective Pitts was not involved in any interview of witnesses [] Quinones and Tatiyana [], both of whom identified [Shelton] as the shooter from a photo array. [Shelton] has not offered any evidence of misconduct regarding any of the detectives who took the statements from these witnesses.
>
> Moreover, while Detective Pitts was involved in taking two of Shantee['s] [] statements, Shantee [] did not implicate [Shelton] in either of those statements. While Shantee [] was preparing for trial with Detective [] Hammond on September 12, 2016, just days before trial commenced, she told Detective Hammond that Benjamin had told her that [Shelton] was one of the shooters. Detective Hammond then took a statement from Shantee [], which was presented to the jury at trial. Detective Pitts was not involved at all in that statement.
>
> Finally, it is true that Detective Pitts, along with [his partner], took [] Benjamin's statement on July 28, 2014. In this statement, Benjamin implicated [Shelton] as one of the shooters.

- 5 -

It is also true that at trial, Benjamin recanted his identification of [Shelton] and alleged that Detective Pitts coerced Benjamin into implicating [Shelton] as the shooter. Specifically, Benjamin alleged that Detective Pitts punched him repeatedly when he told the detectives [that] he did not know who was involved in the shooting. Benjamin further testified that the detectives told him that they were aware of multiple robberies [that Benjamin] had committed[,] and that if he gave them names of the shooters, then [Benjamin] would be free to go. Benjamin further stated that it was Detective Pitts who first suggested that [Shelton] was the shooter, and that Benjamin implicated [Shelton] so that he could go home to his family.

However, Benjamin gave a second statement to Detective [John] Harkins [("Detective Harkins")] and [his partner] on August 4, 2014, without Detective Pitts being present[. I]n [this statement] he confirmed that everything he had told detectives during his July 28, 2014, interview was accurate. During this interview, Benjamin did not complain of any misconduct on the part of Detective Pitts, and did not claim that his first statement was inaccurate or coerced. Although Benjamin denied that this interview with Detective [] Harkins and [his partner] occurred, Detective Harkins directly contradicted that denial. Benjamin's denial of his interview with Detective Harkins and [his partner] is also contradicted by Benjamin's testimony at the preliminary hearing, in which he acknowledged that the interview [with Detective Harkins] took place. [Shelton] has proffered no evidence of any misconduct regarding Detective [] Harkins or [his partner].

Moreover, while Benjamin emphatically attempted to recant his statements to police[,] in which he implicated [Shelton] in the shooting, he also gave substantial testimony at trial that supported the Commonwealth's case. In particular, while [Benjamin] claimed that [Shelton] was not a shooter, he nevertheless identified [Shelton] as being present with another male at the time and place of the shooting. [Benjamin] also confirmed that he had told Shantee [] to tell the police that [Shelton] was involved with the shooting[,] … corroborating Shantee['s] statement to Detective Hammond….

Accordingly, the findings in Judge Sarmina's unrelated case regarding Detective Pitts would not likely compel a different verdict if [Shelton] were granted a new trial. No relief is due.

PCRA Court Opinion, 9/16/20, at 5-7 (citations omitted).

Our review of the record confirms the PCRA court's findings, analysis, and conclusion. Moreover, the testimony at trial, coupled with the video surveillance, demonstrates that two men, one of which was Shelton, fired multiple rounds at the individuals on the porch, and into the house. **See** N.T. (Jury Trial Vol. 1, Day 2), 9/16/16, at 46-66 (wherein Detective Thorsten Lucke provided narration of the video surveillance depicting two individuals firing multiple rounds at the porch and house); **see also** N.T. (Jury Trial Vol. 1, Day 1), 9/15/16, at 155-57, 181-82, 185-86 (wherein Quinones testified that both men were shooting at the house, and Quinones identified Shelton in a photo array as one of the shooters); N.T. (Jury Trial Vol. 2, Day 1), 9/17/16, at 183-92, 194-97, 205-10 (wherein Detective Harkins read the prior witness statements, identifying Shelton as one of the shooters, to the jury). Thus, Judge Sarmina's ruling in **Thorpe** would not have compelled a different verdict. **See Ford**, **supra**; **see also Padillas**, **supra**; **Commonwealth v. Brown**, 52 A.3d 1139, 1170-71 (Pa. 2012) (stating that prior inconsistent statements are sufficient to support a conviction so long as the statements, taken as a whole, can establish every element beyond a reasonable doubt, and the finder of fact could have reasonably relied upon the statements in arriving at its decision).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/19/21