J-S09040-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.C.F., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.F., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 20 EDA 2025 |

Appeal from the Decree Entered December 4, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000337-2024

BEFORE:   LAZARUS, P.J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:               **FILED MAY 16, 2025**

M.F. ("Mother") appeals the December 4, 2024, decree that involuntarily terminated her parental rights to her son, A.C.F., born in April 2011 ("Child").[1] Mother's court-appointed counsel, Lisa Visco, Esquire ("Counsel"), has filed a petition to withdraw and accompanying brief, pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 602 Pa. 159, 978 A.2d 349 (2009).  Upon careful review, we grant Counsel's petition to withdraw and affirm the termination decree.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] By separate decree entered the same date, the court also terminated the parental rights of Child's biological father, C.M. ("Father").  Father filed a notice of appeal, which is disposed of by a separate panel of this Court at 41 EDA 2025.

We summarize the following relevant facts and procedural history, which we glean from the certified record. On February 26, 2023, the Philadelphia Department of Human Services ("DHS") received a general protective services ("GPS") report which alleged that Mother was hospitalized due to a drug overdose. *See* N.T. (Goal Change Hearing), 12/4/24, at 8. Child witnessed Mother overdose and called 911 on her behalf. *See id*. While hospitalized, Mother tested positive for phencyclidine ("PCP"), benzodiazepines, and opiates.

On June 16, 2023, Child was adjudicated dependent but continued to reside with Mother pursuant to a safety plan. Thereafter, in July 2023, Mother tested positive for opiates twice and the court consequently removed Child from Mother and transferred him to the custody of DHS. *See id.* at 8. Initially, Child was placed with a kinship resource. *See id.* at 8-9. In approximately December 2023, DHS transferred Child to a pre-adoptive home in the care of R.S. ("Foster Mother") where he remained at the time of the termination hearing. *See id*.

The court established Child's initial permanency goal as reunification. In furtherance of reunification, Mother was ordered to, *inter alia*: (1) address her substance abuse issues; (2) engage in mental health treatment; (3) permit Community Umbrella Agency ("CUA") to perform a home assessment; (4) attend visitation with Child; (5) sign all consents and releases; and (6)

successfully complete parenting and domestic violence courses through the Achieving Reunification Center ("ARC").

The trial court held regular permanency review hearings between July 2023 and September 2024. Initially, Mother appropriately engaged with her permanency objectives. *See* DHS Exhibit 4, Dependency Docket. In October 2023, the court determined Mother was substantially compliant with her permanency plan and increased her supervised visitations from once a week at CUA to twice a week in the community, with an additional unsupervised visit on Fridays. *See* N.T., 12/4/24, at 11. In February 2024, the trial court rated Mother's progress as minimal and reduced Mother's visitation to twice a week supervised at CUA after learning Father was visiting with Child during Mother's unsupervised time in violation of the dependency court's order providing that he only have contact with Child under third-party supervision.[2] *See id*. At this time, the court also ordered Mother to sign all outstanding releases and consents to confirm her engagement in services. *See* DHS Exhibit 4, Dependency Docket.

Following the reduction in her visitation privileges, Mother's compliance with her permanency objectives continued to deteriorate. She did not consistently submit to drug screens, and when she did, she tested positive for fentanyl and opiates. *See* N.T., 12/4/24, at 13. Ultimately, other than

_____

[2] Father had only been permitted supervised visitation at CUA's office. *See* DHS Exhibit 4, Dependency Docket.

completing ARC's parenting course, Mother failed to address her substance abuse issues, engage in mental health treatment, sign consents and releases, or complete ARC's domestic violence course. *See id.* at 13-16. Finally, although CUA continued to offer Mother visitation through the September 2024 permanency review hearing, her last visit with Child occurred in May 2024. *See id.* at 11. Thus, she failed to participate in visitations with Child for a period of four months immediately preceding the filing of the subject termination petition by DHS.

On September 4, 2024, DHS filed a petition for the involuntary termination of Mother's parental rights to Child pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). Child's guardian *ad litem* ("GAL") from his dependency case fulfilled the same role in the termination proceeding. In compliance with Section 2313(a) of the Adoption Act, the court also appointed Pierre Simonvil, Esquire, as legal interest counsel for Child.[3]

---

[3] In what appears to be a clerical error, we note that the court appointed Attorney Simonvil on Child's dependency docket and not the adoption docket. Nonetheless, Attorney Simonvil represented Child through the termination proceedings. While we are mindful of the requirement that counsel be "appointed" for the purposes of 23 Pa.C.S.A. § 2313(a), we do not find that the absence of a formal order constitutes "structural error." *See generally In re Adoption of K.M.G.*, 663 Pa. 53, 79-82, 240 A.3d 1218, 1234-1236 (2020). Specifically, we are persuaded by the reasoning proffered by our Supreme Court in *In re T.S.*, 648 Pa. 236, 253, 192 A.3d 1080, 1090 n.19 (2017)., wherein counsel served as both GAL and legal interest counsel in contested proceedings despite the absence of a formal order appointing counsel to those roles in the adoption docket. *See id*. In *T.S.*, our Supreme Court declined to "elevate form over substance" in circumstances when it was

*(Footnote Continued Next Page)*

The trial court conducted an evidentiary hearing on December 4, 2024, at which time Child was thirteen years old. DHS presented the testimony of Shiera Williams, CUA case manager supervisor, and Angel Washington, CUA case manager. Mother did not appear or testify at the hearing, but she was represented by Counsel.

On the same day as the hearing, the trial court filed a decree that involuntarily terminated Mother's parental rights to Child pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). The court provided its rationale for the decision at the conclusion of the hearing on the record in open court. *See* N.T., 12/4/24, at 35-39.

On January 3, 2025, Counsel, on behalf of Mother, timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On February 3, 2025, the trial court filed a statement pursuant to Rule 1925(a) referring this Court to its analysis provided at the conclusion of the December 4, 2024 hearing. On February 17,

_____

clear that the child received appropriate legal representation despite the absence of an appointment order. *See id.*; *see also Commonwealth v. D'Amato*, 579 Pa. 490, 517-18, 856 A.2d 806, 822 (Pa. 2004) (holding that, where a lawyer who had not entered his appearance pursuant to the criminal procedural rules effectively represented a defendant during a critical stage of trial, the technical defect did not deprive the defendant of his right to counsel). The instant case presents a fair parallel to the reasoning of the High Court in *T.S.* and *D'Amato*. Thus, we find no structural error. *See id*. Going forward, however, we urge the trial court to enter formal orders appointing counsel to represent a child's legal interests in an involuntary termination proceeding in the appropriate docket.

2025, Counsel filed an application to withdraw and a brief pursuant to **Anders**. Therefore, we must begin our review by addressing Counsel's application to withdraw and accompanying brief. **See In re Adoption of B.G.S.**, 240 A.3d 658, 661 (Pa.Super. 2020) ("When faced with a purported **Anders** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.").[4]

> To successfully withdraw pursuant to **Anders**, counsel must:
>
> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [**Anders**] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

**Commonwealth v. Cartrette**, 83 A.3d 1030, 1032 (Pa.Super. 2013) (*en banc*) (citation omitted). Counsel must also "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." **Commonwealth v. Millisock**, 873 A.2d 748, 752 (Pa.Super. 2005).

Additionally, our Supreme Court has set forth the following requirements for **Anders** briefs:

> [W]e hold that in the **Anders** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth

---

[4] We note that this Court has expanded the **Anders** procedure to appeals from decrees involuntarily terminating parental rights. **See B.G.S.**, 240 A.3d at 661.

counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 602 Pa. at 178-79, 978 A.2d at 361.

Instantly, Counsel submitted both an application to withdraw and a brief certifying that, following a conscientious and thorough review of the record and relevant case law, she believes Mother's appeal is wholly frivolous. **See** Application to Withdraw, 2/8/25. Counsel attached a **Millisock** letter to her petition, which she sent to Mother on February 17, 2025. **See id**. The letter advised Mother of her right to retain new counsel or proceed *pro se*, and to raise additional points she deems worthy of this Court's attention.[5] Counsel also provided Mother with a copy of her **Anders** brief and the application to withdraw. **See id**. Thus, we readily conclude that the requirements of **Cartrette** and **Millisock** are satisfied.

Further, the **Anders** brief submitted by Counsel included an adequate summary of the procedural history and facts of the case with citations to the record, a discussion of issues that could arguably support Mother's appeal, and Counsel's assessment that Mother's appellate claims are wholly frivolous with citations to relevant legal authority. **See generally Anders** Brief.

_____

[5] To date, Mother has not responded to Counsel's petition to withdraw and **Anders** brief.

Consequently, we conclude that Counsel has complied with the technical and procedural requirements of ***Anders***.

We must next "conduct a review of the record to ascertain if on its face, there are non-frivolous issues that counsel, intentionally or not, missed or misstated." ***Commonwealth v. Yorgey***, 188 A.3d 1190, 1197 (Pa.Super. 2018) (*en banc*).

Counsel's ***Anders*** brief raises the following issues for our review:

1. Whether DHS failed to prove by clear and convincing evidence that Mother's parental rights should have been terminated pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (8) since she had substantially completed her objectives as required?

2. Whether there was a strong emotional and parental bond between Mother and Child which would have had a negative effect on Child if the parental bond was permanently severed pursuant to 23 Pa.C.S.A. § 2511(b)?

***Anders*** Brief at 5 (cleaned up).[6]

Our standard of review in this context is well-established:

In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.

---

[6] In lieu of a brief, Child's GAL filed a letter expressing his belief that that there are no grounds for Mother's appeal. ***See*** Letter, 3/9/25. Child's legal interest counsel did not file a brief or letter.

An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.

In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Interest of M.E.*, 283 A.3d 820, 829-30 (Pa.Super. 2022) (cleaned up).

The involuntary termination of parental rights is governed by Section 2511 of the Adoption Act, which calls for a bifurcated analysis that first focuses upon the eleven enumerated grounds of parental conduct that may warrant termination. *See* 23 Pa.C.S.A. § 2511(a)(1)-(11). If the trial court determines the petitioner has established grounds for termination under one of these subsections by "clear and convincing evidence," the court then assesses the petition pursuant to Section 2511(b), which focuses upon the child's developmental, physical, and emotional needs and welfare. *See In re T.S.M.*, 620 Pa. 602, 71 A.3d 251, 267 (2013); *see also* 23 Pa.C.S.A § 2511(b).

This Court need only agree with the trial court's determination as to any one subsection of Section 2511(a), in addition to Section 2511(b), in order to affirm termination. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). For the following reasons, we conclude that the certified record supports the trial court's determinations under 23 Pa.C.S.A. § 2511(a)(8) and (b), which provide as follows:[7]

> **(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.
>
> . . .
>
> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

---

[7] Given our disposition relative to Section 2511(a)(8), we need not review, and render no conclusions as to the trial court's findings with respect to, Section 2511(a)(1), (2), and (5). *See B.L.W.*, 843 A.2d at 384.

- 10 -

23 Pa.C.S.A. § 2511(a)(8), (b).

In order to satisfy Section 2511(a)(8), the petitioner must prove that: (1) the child has been removed from the parent's care for at least 12 months; (2) the conditions which led to the removal or placement still exist; and (3) termination of parental rights would best serve the needs and welfare of the child. *See In re Adoption of J.N.M.*, 177 A.3d 937, 943 (Pa.Super. 2018). Section 2511(a)(8) does not necessitate an evaluation of a parent's willingness or ability to remedy the conditions that led to the removal of the child. *See In re M.A.B.*, 166 A.3d 434, 446 (Pa.Super. 2017). Rather, our inquiry is focused upon whether the at-issue "conditions" have been "remedied" such that "reunification of parent and child is **imminent** at the time of the hearing." *In re I.J.*, 972 A.2d 5, 11 (Pa.Super. 2009) (emphasis added). Relevant to the third prong of Section 2511(a)(8), this Court has explained that,

> while both Section 2511(a)(8) and Section 2511(b) direct us to evaluate the "needs and welfare of the child," we are required to resolve the analysis relative to Section 2511(a)(8), prior to addressing the "needs and welfare" of [the child], as proscribed by Section 2511(b); as such, they are distinct in that we must address Section 2511(a) before reaching Section 2511(b).

*In re Adoption of C.L.G.*, 956 A.2d 999, 1009 (Pa.Super. 2008) (*en banc*).

If the trial court concludes that adequate grounds for termination exist pursuant to Section 2511(a), the court then turns to Section 2511(b), which requires that it "give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b); *see also*

***T.S.M.***, 71 A.3d at 267. Our Supreme Court has outlined this inquiry as follows:

> [C]ourts should consider the matter from the child's perspective, placing her developmental, physical, and emotional needs and welfare above concerns for the parent.
>
> Accordingly, the determination of the child's particular developmental, physical, and emotional needs and welfare must be made on a case-by-case basis. We have observed the law regarding termination of parental rights should not be applied mechanically but instead always with an eye to the best interests and the needs and welfare of the particular children involved. Thus, the court must determine each child's specific needs.
>
> Moreover, the child's emotional needs and welfare include intangibles such as love, comfort, security, and stability. As further guidance, we have identified factors, *i.e.*, specific needs and aspects of the child's welfare, that trial courts must always consider. The courts must consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents. And, if the child has any bond with the biological parent, the court must conduct an analysis of that bond, which is not always an easy task.

***Interest of K.T.***, ___ Pa. ___, 296 A.3d 1085, 1105-06 (2023) (internal citations, quotations, and footnotes omitted).

The Court has further explained that "[i]t is only a necessary and beneficial bond, after all, that should be maintained." ***Id.*** at 1109. The "severance of a necessary and beneficial relationship [is] the kind of loss that would predictably cause 'extreme emotional consequences' or significant, irreparable harm." ***Id.*** at 1109-10. Bond, permanency, stability, and all other intangibles are "all of 'primary' importance in the Section 2511(b) analysis." ***Id.*** at 1109. The extent of the "bond-effect analysis necessarily depends on

the circumstances of the particular case." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa.Super. 2010).

In the case *sub judice*, with respect to Section 2511(a)(8), the court concluded on the record in open court that more than twelve months had elapsed since Child's removal from Mother's care, that the conditions that led to Child's removal continued to exist because Mother failed to engage with the services offered throughout the case, and that termination best served Child's needs and welfare. *See* N.T., 12/4/24, at 37-38. Our review of the certified record confirms that competent evidence supports the trial court's findings.

Preliminarily, Child was removed from Mother's care in July 2023. *See id.* at 8-9. Thus, Child had been out of her care for more than the requisite twelve months at the time the Agency filed its termination petition on September 4, 2024.

Regarding the second prong of Section 2511(a)(8), as detailed in the factual summary above, our review of the certified record confirms that Mother did not engage with or make any substantial overall progress on her permanency objectives and, therefore, the conditions that led to Child's removal continued to exist. Most significantly, Mother did not address her substance abuse issues. *See id.* at 13-14. Ms. Williams testified that Mother did not consistently submit to drug screens, and when she did, she tested positive for opiates and fentanyl. *See id.* at 13. Mother's most recent drug screen occurred in April 2024, wherein she tested positive for fentanyl. *See*

*id.* We acknowledge that Mother informed Ms. Williams that she was attending a substance abuse treatment program. However, the provider informed Ms. Williams that Mother had not signed consents to allow them to release any documentation. *See id.* at 14. Therefore, Ms. Williams, CUA, and DHS were unable to confirm Mother's attendance or progress with the program. Indeed, the certified record is bereft of any specific information concerning the nature of Mother's purported treatment program.

Further, as related *supra*, Mother briefly had unsupervised visitation with Child, but this was rescinded after CUA learned that Mother allowed Father to visit with Child during these visits. *See id.* at 11-12. The court offered Mother visitation through the duration of Child's dependency, but Mother's last visit with him occurred in May 2024. *See id.* at 11.

Mother also failed to address her mental health issues. Ms. Williams testified that CUA wanted to ensure that Mother had the mental capacity to care for Child and provide him with a safe environment. *See id.* at 14. As such, the trial court ordered Mother to submit to a parenting capacity evaluation. *See id*. Ms. Williams reported that the provider closed out CUA's referral after Mother rescheduled the intake four times and ultimately never availed herself of the intake procedure. *See id.* at 15. In order to re-refer Mother for the parental capacity evaluation, Ms. Williams testified that she needed Mother to sign consent forms, which Mother once again refused. *See*

*id.* Finally, Ms. Williams stated that Mother prevented CUA from conducting a home assessment. *See id.* at 16.

Based upon the foregoing evidence, the record clearly supports the orphans' court's finding that the conditions of Child's removal continued to exist at the time of the termination proceeding. Thus, the trial court's findings with respect to the second element of Section 2511(a)(8) are well-supported by competent evidence.

Turning to the third and final prong of Section 2511(a)(8), Ms. Williams opined that when Child, who was thirteen at the time of the termination proceeding, visited Mother, he appeared to feel responsible for his own safety and does not view Mother "in a parental figure way." *See* N.T., 12/4/24, at 14, 18. Ms. Williams testified that he is doing well in his pre-adoptive placement. *See id.* at 22-24. She further informed the court that Child stated he wants to be adopted. *See id.* at 24. Ms. Washington also confirmed that Child desires to be adopted. *See id.* at 27. She testified that Foster Mother has provided a stable and loving environment for him. *See id.* at 28. Therefore, we observe no error of law or abuse of discretion in the trial court's finding that termination would best serve the needs and welfare of Child.

Based upon the foregoing, the trial court was well within its discretion to terminate Mother's parental rights under Section 2511(a)(8) because the certified record fully supports its findings that Child had been removed from her care in excess of the twelve-month statutory minimum, the conditions

which led to Child's removal continued to exist, and termination would best serve the needs and welfare of Child.

Since we have confirmed that termination was warranted with respect to at least one subsection of Section 2511(a), we turn to evaluate the propriety of termination under Section 2511(b). With respect to Section 2511(b), the trial court concluded that Mother and Child do not share a parent-child bond. **See** N.T., 12/4/24, at 38. The court further determined that Child will not suffer irreparable harm if Mother's rights were terminated. **See id**. The court's findings are well-supported in the certified record.

As detailed above, Ms. Williams denied the existence of a parent-child relationship between Mother and Child. **See id.** at 17. She emphasized that Mother appears disinterested in such a relationship, stating, "Mom doesn't seem to be prioritizing [Child's] safety or her relationship with [Child] or for him to look at her in a parental way at all." **See id.**

As a result, Ms. Williams continued, Child "doesn't look to her in a parental figure way." **See id.** at 18. This has manifested in Child's becoming "parentified," which, Ms. Williams explained, meant "[he] appears to be more concerned with his safety and wellbeing then [sic] Mom." **See id.** at 14. Nor has Child received financial support, cards, letters, or gifts from Mother in the relevant time. **See id.** at 17. Consequently, it was Ms. Williams' opinion that because Child does not view Mother as a parental figure, he would not suffer

- 16 -

irreparable harm if the court terminated Mother's parental rights. *See id.* at 18.

As Mother did not testify, there is no evidence suggesting the existence of a child-parent bond between her and Child. It is well-established that "[i]n cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists." *In re K.Z.S.*, 946 A.2d 753, 762 (Pa.Super. 2008).

Concomitantly, Ms. Washington testified that Child's foster mother provides Child with love and stability, and she meets all his needs. *See* N.T., 12/4/24, at 28-29. In sharp contrast to his experience with Mother, where Child was forced to be entirely concerned about his own safety, Ms. Washington stated that Child is able to "act like a kid" when he is with Foster Mother. *See id.* at 28. Accordingly, she opined that it is in Child's best interest to be adopted. *See id.* at 29. Therefore, we discern no abuse of discretion or error of law in the trial court's conclusion that termination best serves Child's developmental, physical, and emotional needs and welfare pursuant to Section 2511(b).

Based upon our independent analysis, the certified record does not reveal any overlooked non-frivolous issues. Therefore, we grant Counsel's petition to withdraw and affirm the decree terminating Mother's parental rights to Child pursuant to 23 Pa.C.S.A. § 2511(a)(8) and (b).

Counsel's petition to withdraw granted. Decree affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/16/2025